Royal McBee Corporation Tax Case.

Argued March 24, 1958. Before JONES, C. J., BELL,
CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

478

*Regis Narin,* Assistant City Solicitor, with him *George Shorall,* Assistant City Solicitor, and *J. Frank McKenna, Jr.,* City Solicitor, for appellant.

*Frank J. Gaffney,* with him *Thorp, Reed & Armstrong,* for appellee.

OPINION BY MR. JUSTICE BELL, June 30, 1958:

Is the taxpayer entitled to a refund of mercantile taxes paid by it to which the City of Pittsburgh was not legally entitled?

Taxpayer was a foreign *manufacturing* corporation which sold some of its products in Pittsburgh.

In *Isaly Dairy Co. v. Pittsburgh,* 379 Pa. 108, 108 A. 2d 728 (November 8, 1954), this Court decided that a mercantile license tax could not be imposed by the City under the Act of June 25, 1947, P. L. 1145, 53 PS 6851, as amended by the Act of May 9, 1949, P. L. 898, on receipts from the sale of products *manufactured* in Pittsburgh by a Pennsylvania corporation, even though they were sold by the manufacturer in its own retail stores in Pittsburgh, in locations apart from the place of its manufacture. The Court approved the order of the County Court of Allegheny County which ordered the City to refund to that taxpayer the mercantile license taxes which it had paid on said gross receipts for the years *1950 to 1953,* inclusive.

In *General Foods Corporation v. Pittsburgh,* 383 Pa. 244, 118 A. 2d 572 (November 30, 1955), this Court decided that the Act of June 25, 1947, as amended,[*] forbids the taxation by political subdivisions of any

---

[*] supra.

privilege, act or transaction relating to the business of manufacturing and consequently Pittsburgh could not impose a mercantile license tax on products manufactured by a foreign corporation, even though sold in Pittsburgh.

Based upon these decisions and the City ordinances which *exempted manufacturing products* from a mercantile license tax, the McBee Corporation made its claims for refunds in the instant case. The City concedes that under the provisions of its mercantile license tax ordinances and the above mentioned cases, this taxpayer was not subject to a mercantile license tax.

On August 30, 1956, the taxpayer appealed from the decision of the Treasurer of the City of Pittsburgh refusing to refund certain mercantile tax payments for the years 1949, 1950, 1951, 1952 and 1955, because of the taxpayer's failure to follow the procedure prescribed in the ordinance of the City of Pittsburgh and the regulations thereunder. The City ordinances were passed under the authority conferred by the enabling Act of June 25, 1947 and its amendment, supra. The County Court, after hearing, sustained the appeal and ordered refunds to the taxpayer of all mercantile taxes for the years 1950-1955 inclusive, together with penalties and interest which had been paid by the taxpayer for the years 1949 through 1951, inclusive. The City of Pittsburgh then took this appeal.

Taxpayer paid mercantile license taxes for the years 1950-1952 inclusive *without protest,* but paid said taxes for 1953-1955 under protest. The taxpayer, we repeat, was not liable, under the law, for any of these taxes.

The City contends that there can be no refund of any of these taxes under the common law, or under any provisions of any Act of the Legislature, nor under any City Ordinance (passed pursuant to the enabling Act) or under the Mercantile License Tax Regulations.

At common law a voluntary payment of taxes, erroneously made, could not, in the absence of a statute, be recovered: *Calvert Distillers Corp. v. Board of Finance & Revenue,* 376 Pa. 476, 479, 103 A. 2d 668 (1954); *Girard Trust Co. v. Philadelphia,* 359 Pa. 319, 325, 59 A. 2d 124 (1948); *Hotel Casey Co. v. Ross,* 343 Pa. 573, 23 A. 2d 737 (1942); *Arrott v. Allegheny County,* 328 Pa. 293, 194 A. 910 (1937). There was one exception to this rule, namely, where the tax was void, and the payment was made under compulsion: *Wilson v. Philadelphia School District,* 328 Pa. 225, 243, 195 A. 90 and cases cited therein. Taxes for the years 1949-1952 inclusive, which were voluntarily paid, obviously do not fall within this exception.

The Act of May 21, 1943, P. L. 349, §1, 72 PS 5566b, upon which the taxpayer mainly relies, provided that a refund shall be made "Whenever any person or corporation of this Commonwealth has erroneously or inadvertently paid . . . into the treasury of any political subdivision, . . . any tax . . . *on real or personal property** or any license fee . . . under an assumption that such taxes or license fees were due and owing, when in fact such taxes or license fees, or a part thereof, were not due and owing . . . ."

It is clear that this statute did not limit refunds to taxes which were paid under protest, or to those cases where an appeal was taken to a County Court. However, the Act of 1943, supra, allowed a refund only on taxes erroneously or inadvertently paid on real or personal property, or a license fee, and the mercantile license tax which was paid in these cases was not a property tax or a license fee, but was an excise or franchise tax: *National Biscuit Company v. Philadelphia,* 374 Pa. 604, 613, 98 A. 2d 182 and cases cited therein. The tax-

---

* Italics throughout, ours.

payer would not be entitled to a refund under this Act. See also: *Pittsburgh Coal Co. v. Forward Township School District,* 366 Pa. 489, 78 A. 2d 253. Cf. *Girard Trust Co. v. Philadelphia,* 359 Pa., supra.

The mercantile license tax was originally imposed by the City by Ordinance dated December 1, 1947. It was reenacted by Ordinance #562, approved November 29, 1949, and was amended by Ordinance #609, approved December 24, 1949. The original ordinance did not contain any provision relating to payments of tax under protest. Section 12 of the Ordinance of December 24, 1949, authorized (for the first time) the Treasurer of the City of Pittsburgh to accept payments of mercantile tax under protest. Section 12 provides as follows:

"Section 12. Payment Under Protest.—Refunds.— The City Treasurer is hereby authorized to accept payment under protest of the amount of mercantile tax claimed by the City in any case where the taxpayer disputes the validity or amount of the City's claim for tax. If it is thereafter judicially determined by a court of competent jurisdiction that the City has been overpaid, the amount of the overpayment shall be refunded to the taxpayer. The provisions of this section shall be applicable to cases in which the facts are similar to those in a case litigated in a court of competent jurisdiction."* This provision was made *retroactive to January 1, 1948.*

On December 1, 1953, the City adopted Ordinance #404 which again imposed a mercantile license tax, and again authorized the City Treasurer to accept payment of mercantile taxes under protest; and included §12, supra, therein. A similar ordinance (minus, we

---

* This last sentence was eliminated by Ordinance #383 dated November 12, 1954.

repeat, the last sentence in §12) was enacted November 12, 1954. Since November 12, 1954, the Treasurer of the City of Pittsburgh has taken the position that in every demand for a refund of mercantile license tax payments, the claimant must obtain a judgment from a court of competent jurisdiction* showing the taxpayer to be entitled to a refund.

### 1953-1954 Taxes

The taxpayer paid its 1953 and 1954 mercantile taxes under protest. The City Treasurer wrote the company a letter dated July 3, 1956, in which he pertinently said: "Your company is entitled to a refund of the Mercantile Taxes paid for these years on sales of articles of its own manufacture. However, the City of Pittsburgh Ordinance was amended for the year 1955, which requires, in addition to payment under protest, that an appeal be taken to the County Court of Allegheny County. Since these conditions were not complied with for the year 1955, no refund of mercantile Tax for that year will be honored." In view of this admission, further discussion of a refund of the 1953-1954 tax is unnecessary.

### 1955 Taxes

The Act of 1943 was amended by the Act of June 21, *1957*, P. L. 381, §2, to read as follows: "Whenever any person or corporation of this Commonwealth *has* paid or caused to be paid, or hereafter pays or causes to be paid, into the treasury of any political subdivision, directly or indirectly, voluntarily or under protest, *any taxes of any sort,* license fees, penalties, fines or any other moneys to which the political subdivision *is not legally entitled;* then, in such cases, the proper authorities of the political subdivision, upon the filing

---

* The regulations of the Treasurer issued pursuant to said Ordinance of 1954 provided for an appeal to the County Court of Allegheny County.

with them of a written and verified claim for the refund of the payment, are hereby *directed* to make, out of budget appropriations of public funds, refund of such taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled. Refunds of said moneys shall not be made, unless a written claim therefor is filed, with the political subdivision involved, *within two years of payment* thereof."

The taxpayer paid a mercantile license tax for 1955 under protest and claimed a refund in substantial compliance with the Act, and within two years of payment thereof. Taxpayer's right to a refund for taxes paid by it to the City for 1955 cannot be defeated by any City ordinance or regulations which conflict with or are inconsistent with a pertinent Act of the Legislature. We agree with the lower Court that taxpayer was entitled to a refund of mercantile license taxes which it paid for the year 1955.

## 1949-1952 Taxes

The City contends that no refund of taxes which were erroneously paid by the taxpayer for the years 1950 through 1952 (or for penalties and interest for the years 1949-1951) can be made because (a) the taxes were not paid under protest and (b) the Treasurer's hearing was not requested as required by its regulations pertaining to assessments and (c) no appeal was taken to any court of competent jurisdiction as required by the Ordinances of 1949-1952 inclusive, or to the County Court of Allegheny County, as required by the City Ordinances of 1953-1955 inclusive. While the taxes and assessments for these years were not paid under protest and no Treasurer's hearing was requested or was held until June 22, 1956, the taxpayer by letter dated March 12, 1953, stated that the City was powerless to impose these taxes. From an adverse decision by the

Treasurer, the taxpayer on August 30, 1956 appealed to the County Court which ordered a refund. The City then took the present appeal.

Taxpayer contends there was no statutory or other limitations of its right to a refund until the Act of April 4, 1956.

In *Longacre v. Delaware County*, 160 Pa. Superior Ct. 252, 50 A. 2d 706, that Court allowed a refund where the .claim was brought 11 years after payment of the taxes and 8 years after discovery of the error under which they had been paid. The Superior Court based its decision upon the fact that no time limitation was imposed in the enabling Act, or in the ordinance which permitted refunds. The Court said (page 255):

"The law prior to the Act of 1943 sanctioned the unmoral practice under which municipalities, in general, kept and used for municipal purposes, funds however erroneously paid and unlawfully received by them. The former laws on the subject—the Act of May 8, 1929, P. L. 1656, and of June 2, 1937, P. L. 1211, did no more than to make the refund of taxes, erroneously paid, discretionary, first as to counties and then as to all municipal political subdivisions. Prior to the 1937 act the borough was powerless to grant refunds of taxes erroneously but voluntarily paid, without protest. Arrott v. Allegheny County, 328 Pa. 293, 194 A. 910. Obviously, there was mischief to be remedied, supplying the occasion and necessity for the 1943 act; the object to be attained was to impose upon municipalities *standards of common honesty* in relation to the collection of taxes, compelling them, for the first time, to refund taxes paid to them under mistake of law."

Taxpayer contends that the Act of 1943, supra, provided that the Act was retroactive and effective as "to any and all taxes and fees heretofore erroneously or inadvertently paid into the treasury of any political

subdivision for a period not exceeding three years prior to the discovery of such erroneously paid taxes and fees". Taxpayer further contends that when the Act was amended by the Act of April 4, 1956 (1955), P. L. 1388, which reenacted the provision in the old §3 as part of a new §1, the retroactive provision of the Act of 1943 was still valid and applicable as of the time of the hearing and decision in the court below. The aforesaid Acts do not support taxpayer's position because the Act of 1943, as amended prior to 1957, did not apply to or cover, as hereinabove determined, mercantile license taxes, and consequently the retroactive provision would be inapplicable to mercantile license taxes.

It is clear that taxpayer would be entitled to a refund for mercantile license taxes erroneously paid for the years 1949 to 1952 inclusive, only if it complied with the provisions of the City's ordinance and pertinent reasonable and valid regulations. Taxpayer failed to pay its 1950-1952 taxes under protest as required by the City ordinance and consequently is not entitled to a refund thereunder or of penalties and interest paid for the years 1949-1952.

The judgment of the lower court is modified by eliminating therefrom a refund of taxes, penalties and interest for the years 1949-1952 inclusive; and as thus modified is affirmed.