Glendale Heights Ownership Association *v.*
Glenolden Borough School District,
Appellant.

Argued January 13, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

*Lewis B. Beatty, Jr.,* with him *Butler, Beatty, Greer & Johnson,* for appellant.

*Joseph D. Calhoun,* with him *John E. Power, Jr.,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, July 1, 1958:

This is an appeal from the action of the court below in awarding to a taxpayer, the Glendale Heights Ownership Association, the sum of $11,673.51 which it had paid, under protest, to the School District of Glenolden as a tax on the transfer of certain real estate.

On January 11, 1955, the Federal Government, acting through the Public Housing Administration, notified the tenants of the Glendale Homes Federal Housing Project that the project was to be sold to private interests and advised them, in accordance with federal law, that a first option would be given to a cooperative formed by the tenants able to purchase the project so that it might be operated on a mutual basis for the benefit of all tenant members. A cooperative of tenants was subsequently formed and incorporated as the Glendale Heights Ownership Association. On April 18, 1955, a bid of $1,075,900 on behalf of the Association was qualifiedly accepted by the government agency. On October 17, 1955, final settlement was held in New York

City, and the Association purchased the project for a consideration of $1,075,900.

On June 10, 1955, the School District adopted a resolution to become effective on July 5, 1955, imposing a tax "upon the privilege of transferring real estate situate wholly or partly within the School District . . . at the rate of one per cent (1%) of the value of the real estate transferred." The resolution defined "transferring real estate" as: ". . . The transfer or change of possession of real estate from the grantor to the grantee by the surrender of possession by the grantor or his agent, and the entry or constructive entry into possession by the grantee or his agent, which transfer or change of possession takes place at the site of the real estate involved, regardless of where the deed is prepared, executed, delivered, accepted, recorded or where settlement is consummated." The resolution also provided that the grantor was primarily liable for the tax, but, if for any reason the grantor did not pay, the grantee would then be liable.

On June 28, 1955—eighteen days after adoption of the above resolution—the legislature amended the so-called "Tax Anything" Act of 1947 by Act No. 60 of 1955, P.L. 197 (53 PS §6851) expressly granting school districts the power to levy such taxes "as they shall determine to be paid by the transferor upon the transfer of real property, or of any interest in real property, situate within such political subdivisions regardless of where the instruments making the transfers are made, executed, or delivered or where the actual settlement on such transfers take place. . ." On December 22, 1955 and January 31, 1956, the legislature again amended the 1947 Act by Act No. 276 of 1955, P.L. 897 and Act No. 300 of 1955, P.L. 971 (53 PS §6851). Act No. 276 provided in part: "The provisions of this subsection requiring taxes upon the transfer of real

property, or of any interest in real property, to be paid by the transferor, shall not apply to any ordinance or resolution imposing such tax adopted prior to June twenty-eighth one thousand nine hundred fifty-five. All such ordinances shall continue in full force and effect until the end of the year for which the tax was imposed. All such ordinances and resolutions and the collection of all taxes thereunder are validated." Act No. 300 provided in part: "All ordinances and resolutions, heretofore adopted, imposing taxes upon the transfer of real property, or of any interest in real property, and directing the tax to be paid by the transferee, shall continue in full force and effect. All such ordinances and resolutions and the collection of all taxes thereunder are validated."

At the settlement on October 17, 1955, *subsequent to the taxing resolution of the School District and Amendatory Act No. 60, but prior to Amendatory Acts Nos. 276 and 300,* the Public Housing Administration advised the Association of the existence of the resolution and that, since as a federal agency, the Public Housing Administration would not be liable for the tax, the Association would have to pay the tax or settlement would not be concluded because of the possible impairment of a large mortgage being taken back by the Public Housing Administration.

The Association paid the tax under protest in order to complete the transaction and subsequently brought an assumpsit action to recover the amount of the tax. Preliminary objections in the nature of a demurrer filed on behalf of the School District were dismissed, and a verdict eventually rendered for the Association. Motions for a new trial, judgment n.o.v., and exceptions to the verdict were filed. Upon the dismissal of these motions and entry of judgment on the verdict for the Association, the School District appealed.

The School District urges several reasons for reversal of the court below: first, that the Association has no standing to sue in assumpsit since the tax was voluntarily paid under a mistake of law; second, the School District had authority to levy the transfer tax under the 1947 Act even prior to the amendatory legislation; third, that assuming that it lacked such authority, the curative amendatory legislation retroactively provided it with the requisite authority to levy the tax.

The appeal provisions of the 1947 Act[1] do not govern the present situation because the Association was not a taxpayer as defined therein within the time specified for appeal, nor during the time could the Association represent "25% or more of the total valuation of real estate . . . or 25 in number aggrieved by the ordinance or resolution." Obviously, the statutory provisions governing appeal do not encompass the situation in which the Association was placed, and as to it the appeal provisions of the 1947 Act were inadequate. See *Newville Borough v. DeWalt*, 173 Pa. Superior Ct. 254, 98 A. 2d 402 and *H. J. Heinz Co. v. Pittsburgh*, 170 Pa. Superior Ct. 435, 87 A. 2d 96.

Furthermore, the Association is not precluded from appealing on the basis of the 1943 Act, which first gave a taxpayer a statutory right of appeal to recover taxes voluntarily paid as subsequently interpreted in *Pittsburgh Coal Co. v. Forward Township School District*, 366 Pa. 489, 78 A. 2d 253.[2] In that case, we held that

---

[1] "Within said thirty days [from adoption to effective date], taxpayers representing 25% or more of the total valuation of real estate in the political subdivision as assessed for taxation purposes, or taxpayers of the political subdivision not less than 25 in number aggrieved by the ordinance or resolution shall have the right to appeal therefrom . . ." Act No. 481 of 1947, P.L. 1145, 53 PS §6853.

[2] However, the Association did not base its suit for recovery upon the 1943 Act which, in any event, would seem inapplicable because of the nature of the tax (*Appeal of Royal McBee Corpora-*

no appeal would lie even where the tax was paid under protest, if it was not paid under a mistaken assumption as to the facts or under a misapprehension as to the amount being paid, but only under a belief that the taxing resolution was legally improper.[3] In the *Pittsburgh Coal Co.* case,—an assumpsit action to recover taxes levied by an ordinance under the 1947 Act and paid under protest—there was no allegation that the appeal provisions of the 1947 Act had been pursued or were inadequate as far as that taxpayer was concerned and no reason was given why the taxpayer had not refused to pay the tax and set up the defense of illegality of the resolution in a subsequent suit for collection, rather than adopt the course of voluntary payment under protest. In the present case, the payment of the tax can be considered voluntary only in the most labored sense of the word. The primary transaction for which the corporation was organized, namely the purchase of the project, was in danger of being rescinded by the government agency because of the possible impairment of the mortgage. No logical or practical course of action was open to the Association and it was thus compelled to pay the tax under protest. Under the unique factual situation presented herein, there was no exclusive statutory remedy that would adequately protect the Association; the payment of the tax was

---

tion *Tax Case*, 393 Pa. 477, 143 A. 2d 393), but upon a common law right to recover payments to a municipality which were not voluntarily made: *Wilson v. Philadelphia School District*, 328 Pa. 225, 243, 195 A. 90. Appellant, however, does urge that the *Pittsburgh Coal Co.* case, supra, is factually analogous to the present case and is controlling in determining whether or not the tax was voluntarily paid.

[3] This act was amended on June 21, 1957, by Act No. 204 of 1957, to provide for a refund or suit in any case where the political subdivision is not legally entitled to the tax. This, however, does not assist the present taxpayer since the amendment was prospective only.

not voluntary, and the Association was entitled to rely on the common law remedy and sue in assumpsit for the recovery of the amount paid.

In order to properly evaluate the School District's second contention, that is, that the 1947 Act was alone sufficient without the amendatory legislation to sustain the present taxing resolution, we must examine the provisions of the 1947 Act and certain recent decisions of this Court interpreting the authority of political subdivisions to tax certain real estate transactions.

The Enabling Act of 1947, as it existed prior to the previously enumerated amendments provides: ". . . school districts of the third class and school districts of the fourth class may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes . . . on persons, transactions, occupations, privileges, subjects and personal property *within the limits of such political subdivisions as they shall determine* . . ." Act of June 25, 1947, P. L. 1145, §1, as amended. (Emphasis added). The School District's resolution purported to tax the transfer of real estate, which it defined as "The . . . change of possession of real estate . . . by the surrender of possession by the grantor or his agent . . . and the entry or constructive entry into possession by the grantee or his agent, *which . . . change of possession takes place at the site of* the real estate involved regardless of where the deed is prepared, executed, delivered, accepted, recorded or where settlement is consummated." (Emphasis added). The Enabling Act thus authorized a School District to tax a transaction or privilege within the limits of its political subdivision. By the use of the italicized phrase, the School District obviously attempted to tax the actual or constructive physical

change of possession which *may* be involved in a real estate transfer, and which must take place at the situs of the real estate. If such transfer can be considered as a transaction or privilege, and takes place within the taxing jurisdiction, then it seems apparent that the present resolution would be valid under the 1947 Act alone, provided that prior decisions of this Court are consistent with this conclusion.

Taxes imposed on the execution or presentation of deeds for recording within the taxable jurisdiction have been upheld as valid taxable events. If the execution or recording of a deed which is only evidence of the transfer of legal title can be so regarded, then the actual or constructive change of possession of the real estate itself, if it takes place within the taxing jurisdiction, is also a taxable event whether it be considered as a transaction or a privilege. Although the settlement and the execution of the deed herein took place outside the school district, this is not the "transaction or privilege" that the instant resolution purports to tax. In *L. J. W. Realty Corp. v. Philadelphia,* 390 Pa. 197, 134 A. 2d 878, we demonstrated that not every ingredient of a transaction must take place within the taxing district. It is only necessary that the phase upon which the tax is based occur in the taxing jurisdiction, which in this case is the alleged actual or constructive change of possession.

Neither *City Stores Co. v. Philadelphia,* 376 Pa. 482, 103 A. 2d 664, nor *Philadelphia Appeal,* 383 Pa. 428, 119 A. 2d 205, is contrary to this result. In the *City Stores* case, the ordinance, enacted under the authority of the Sterling Act which limited the levying of the tax to events occurring within the taxing district, imposed a tax upon " 'Every person who makes, executes, issues or delivers any document . . .' " Settlement was held outside the city, and we held that every

taxable event outlined in the ordinance took place outside the taxing district. The ordinance in *Philadelphia Appeal,* supra, used almost precisely the same language as that used in the ordinance in the *City Stores* case.[4] We again held that since settlement took place outside the taxing district every possible taxable event was also performed outside the taxing district. The City had argued that the ordinance was a tax on the "privilege" of transferring real estate. However, the Court properly concluded that, even if this inference could reasonably be drawn from the wording of the ordinance, which in itself was doubtful, the *exercise* of the privilege by the making, issuing or delivering of the deed, which were the only events enumerated in the ordinance, was performed outside the taxing district. Under the instant resolution, there is no doubt as to the taxable event, and that the taxable event—the actual or constructive physical change of possession—*if it took place at all,* must have taken place within the school district.

Despite the fact that the taxing resolution was a valid exercise by the School District of the authority granted it by the 1947 Act, nevertheless the Association is not liable for this tax. The taxing event under the language of this resolution is the "transfer or change of *possession* of real estate from the grantor to the grantee, . . . *and* the *entry or constructive entry into possession* by the grantee or his agent"; this taxing event did not take place, in the instant situation. While title to the realty did pass from the Public Housing Ad-

---

4 "On December 9, 1952, a new ordinance was enacted by the City. It was entitled: 'To provide revenue by imposing a tax on the transfer of real property; . . .' It provided, as did the former ordinance, that 'Every person who makes, executes, issues or delivers any document . . .' should be subject to the tax, which it increased from the former rate of 5 cents per hundred to 1% of the value of the property." *Philadelphia Appeal,* supra, at 431.

ministration to the Association there was no transfer or change of possession nor any entry or constructive entry into possession of the realty by the Association; possession of the realty remained in the same persons who were in possession prior to the transfer of title. The taxing event covered by the resolution did not take place in the instant situation. The most that can be argued on behalf of the School District is that upon completion of settlement, the Association had a right to possession; the transfer of such right occurred outside the taxing jurisdiction, and under the 1947 Act and the decisions previously discussed was beyond the scope of the taxing authority.[5]

The attempted curative legislation was not effective to bring the Association within the purview of this resolution. Even if it be assumed that such legislation could retroactively impose a tax upon the transfer of the right to possession, and that this was the event the School District was attempting to tax, no such retroactive legislation was ever expressly enacted granting this authority to the School District.

Resolutions which purport to levy or assess taxes are subject to a strict construction and any doubt as to the imposition of a tax should be resolved against the taxing authority.[6] Such a construction of the lan-

---

[5] The distinction between the actual possession and the right to possession may be best illustrated by the following example. If property which is occupied by one claiming adversely to the vendor is sold, there is no actual or constructive physical change of possession, although there may be a transfer of the right to possession to the vendee. See also: Tiffany, Real Property (3rd Ed.), Vol. 1, §20: 73 C.J.S. §14, p. 199 et seq.

[6] Statutory Construction Act of May 28, 1937, P. L. 1019, §58. 46 PS §558; *Commonwealth v. Allied Building Credits, Inc.*, 385 Pa. 370, 123 A. 2d 686; *Panther Valley Television Company v. Summit Hill Borough*, 376 Pa. 375, 102 A. 2d 699; *Philadelphia v. Broomall*, 183 Pa. Superior Ct. 296, 130 A. 2d 713.

guage of the instant taxing resolution and an examination of the factual situation herein presented clearly indicates that the event or act which the resolution purports to tax never took place.

Judgment affirmed.