## Box Office Pictures, Inc., Appellant, *v.* Board of Finance and Revenue.

Argued April 18, 1960; reargued November 22, 1960.  Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Edwin P. Rome,* with him *Morris L. Weisberg, Goncer M. Krestal, Huette F. Dowling,* and *Blank, Rudenko, Klaus & Rome,* and *Dowling & Dowling,* for appellants.

*George W. Keitel,* Deputy Attorney General, with him *Mark Yaskin,* Deputy Attorney General, and *Anne X. Alpern,* Attorney General, for Commonwealth, appellee.

*Arlin M. Adams,* with him *Philip M. Hammett,* and *William A. Schnader,* and *Schnader, Harrison, Segal & Lewis,* for amicus curiae, corporations.

OPINION BY MR. JUSTICE EAGEN, January 4, 1961:

To the separate appeals and complaints in mandamus filed in the court below by appellants for the refund of monies paid as license fees to the Commonwealth, the defendant Board of Finance and Revenue of the Commonwealth filed four preliminary objections, the last of which, in effect, set up a five-year limitations statute in bar of the action. The lower court sustained this particular objection and dismissed petitioners' pleadings.

Appellants are Philadelphia distributors of motion pictures. As such, they had been required by the Act of May 15, 1915, P. L. 534, as amended by the Act of May 8, 1929, P. L. 1655, 4 PS §41 et seq. (the so-called "Motion Picture Censorship Act"), to remit to the State Board of Censors a fee of two dollars "for the examination of each film, reel or set of views of one thousand two hundred lineal feet, or less," and two dollars "for each duplicate or print thereof:" Act of May 15, 1915, P. L. 534, §17, as amended by the Act of June 12, 1919, P. L. 475, §1, 4 PS §46. Pursuant to said provision, appellant Box Office Pictures, Inc., paid during the years 1947-1951 $8,564, and appellant Screen Guild Productions of Philadelphia paid during the years 1948-1951 $2,942.25, as fees to the Board of Censors. This action is for the recovery of these sums and is brought on the theory that, since the effect of the decision by this Court in *Hallmark Productions, Inc. v. Carroll,* 384 Pa. 348, 121 A. 2d 584 (1956) was to render void ab initio the Act of 1915, supra, as amended (said Act in *Hallmark* having been declared unconstitutional), the Commonwealth is not entitled to the retention of these monies. The action is brought

under Section 503(a)(4) of the Fiscal Code, 72 PS §503(a)(4).[1]

Appellants' petitions for refund were filed July 31, 1957, not within the period statutorily specified for the filing of said petitions with the Board. It was this issue of noncompliance with the Fiscal Code which constituted the essence of the fourth of the preliminary objections filed by defendant in the court below and which was the one upon which the lower court's decision turned, although it should be noted that the learned trial judge was not unimpressed by each of the other three objections made.

It is important at the outset to note that appellants did not aver payments of the fees under duress or compulsion. In their brief they assert that their contention

[1] "Section 503. Refunds of State Taxes, License Fees, Et Cetera. —The Board of Finance and Revenue shall have the power, and its duty shall be, (a) To hear and determine any petition for the refund of . . . license fees . . . paid to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled. . . . All such petitions for refund must be filed with the board within two years of the payment of which refund is requested, or within two years of the settlement in the case of taxes or bonus, whichever period last expires, except . . . (4) When any tax or other money has been paid to the Commonwealth, under a provision of an act of Assembly subsequently held by final judgment of a court of competent jurisdiction to be unconstitutional. . . . In such case, the petition to the board may be filed either prior or subsequent to such final judgment, but must be filed within five years of the payment of which a refund is requested. . . . The Board shall have jurisdiction to hear and determine any petition for refund filed prior to such final judgment only if, at the time of the filing thereof, proceedings are pending in a court of competent jurisdiction wherein the claims of unconstitutionality or erroneous interpretation made in the petition for refund may be established and in such case the board shall not act upon the petition for refund until the final judgment determining the question or questions involved in such petition has been handed down." (As amended by the Act of January 19, 1952, P. L. 2178, §1).

that section 503(a)(4) is violative of the Fourteenth Amendment to the federal constitution is "based upon the fact that" the payments were made under the duress of the Motion Picture Censorship Act and they further asseverate that "the action of the court below is based upon a consideration that there was a proper allegation of payment of the fees in question under duress and compulsion." Although the lower court did "consider" the arguments presented on the duress and compulsion theory, its decision was definitely not based on any such ground. Indeed, it will affirmatively appear from the following excerpt from the trial court's opinion that his decision was based, because of appellants' failure to aver payment by duress, on a rule of law foreign and, we might add, fatal to appellants' position. Said the court: "Since there is no claim in plaintiff's pleading that it paid the license fees—two dollars for each twelve hundred lineal feet of film—under protest or duress or compulsion of any kind, we must assume the fees were paid voluntarily. We think the heretofore stated and familiar doctrine that monies paid voluntarily under mistake of law cannot be recovered back is applicable here. Hence it follows that the plaintiff, having failed to file its petition with the Board 'within five years of the payment of which refund is requested,' has no standing now to maintain its claim for refund." We think it quite obvious from this that the basis of the court's decision was a well justified assumption of voluntary payment of the fees sought to be recovered by appellants. The question goes to the jurisdiction of the Board. It had no power to entertain petitions not filed in conformance with the statutorily specified procedures. Mr. Justice HORACE STERN (later Chief Justice) speaking for this Court in *Federal Deposit Insurance Corp. v. Board of Finance and Revenue,* 368 Pa. 463, 470, 84 A. 2d 495 (1951), while passing upon the very section of the Fiscal Code

here under attack, wrote: "We understand the clear meaning of Section 503(a)(4) of the Fiscal Code to be that, in order to entitle a taxpayer to obtain a refund, two conditions must be met—(1) the petition must be filed within five years of the settlement or payment of the tax, and (2) the claim for refund must be based upon averment and proof that it had been held, since the payment of the tax, by a court of competent jurisdiction, that the statute under which payment was made had been erroneously interpreted . . . . *These requirements were not merely procedural provisions, but express conditions of the right to obtain a refund, failure to comply with which operated as an absolute bar to the right itself:* (citing cases)."[2]

Here, therefore, appellants have failed to satisfy a statutory condition to their right of recovery, and their appeal, consequently, must fail. But, they attack the constitutionality of the limitations section of the Act and argue that it does not provide an adequate protection of their rights to recover the monies paid by them. They contend that the Commonwealth, in any event, has no right to retain monies paid under duress and that, irrespective of statutory law, such monies must be returned upon demand. But appellants, by their failure to allege duress, by their failure to allege even payment under protest, have not brought themselves within the shadows of the rule they have so vigorously and ably put forth both here and below. Whatever its merits, they are in no position to invoke it.

While the above is conclusive of the issue now before us, we are constrained to go further in our discussion.

The claims herein are fundamentally based upon the premise that when the Motion Picture Censorship Act

---

[2] Emphasis ours.

of 1915 was declared unconstitutional in the year 1956, its unconstitutionality for all purposes automatically became retroactive to 1915. While true it is that, as a general rule, a statute adjudged to be unconstitutional is as if it had never been, there are many well established exceptions: *Philadelphia v. Ridge Ave. Ry. Co.*, 142 Pa. 484, 21 Atl. 982 (1891) ; *Strauss v. W. H. Strauss & Co.*, 328 Pa. 72, 194 Atl. 905 (1937) ; *City Deposit Bk. and Tr. Co. v. Zoppa*, 336 Pa. 379, 9 A. 2d 361 (1939). Any broad statement of absolute retroactive invalidity must be taken with qualifications: *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U. S. 371 (1940). As pointed out therein (page 374), "The actual existence of a statute, prior to such a determination (i.e., unconstitutionality) is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects. . . . Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified."

Censorship of motion pictures in Pennsylvania commenced with the Act of June 19, 1911, P. L. 1067. The act was attacked as violative of both the federal and state constitutions in *Buffalo Branch, Mutual Film Corporation v. Breitinger*, 250 Pa. 225, 95 Atl. 433 (1915). Its constitutionality was sustained and based upon principles previously enunciated in decisions of the Supreme Court of the United States.

The Act of 1911 was repealed and supplemented by the Censorship Act of May 15, 1915, P. L. 534 (4 PS §41 et seq.). The validity of this statute was never questioned in the appellate courts of Pennsylvania until *Hallmark,* supra, in 1956.

Under the Act of 1915, the fees in question were paid without protest as a quid pro quo for the inspection services rendered by the Censorship Board. From these services real and substantial benefits enured to these appellants and others engaged in the business of distributing motion picture film. There was a benefit without resulting loss to those now complaining in as much as the cost incident to these services was, undoubtedly, cast upon the theater-going public. During these long ensuing years, despite adequate opportunity to take legal action to challenge the validity of the Censorship Act, acquiescence, inaction and payment without protest continued until 1956. Viewed in all of these aspects, we cannot now conclude that the administrative actions of the Censorship Board should be viewed as if they never had been.

Finally, the sovereign state of the Commonwealth of Pennsylvania may not be sued without its consent. These actions are, in effect, an attempt to sue the Commonwealth. Assuming, arguendo, (1) that the Act of 1915 was void ab initio; (2) that the fees in question were paid under duress and compulsion: (3) that under common law, the Commonwealth could be sued for recovery; still, the Legislature had the power and authority to prescribe the remedy to be pursued and to annex thereto reasonable conditions incident to the exercise of the right to sue: *State Tonnage Tax Cases,* 79 U. S. 204 (1870). The Commonwealth, under the fiscal code previously alluded to, in effect, permits itself to be sued for fees paid under a statute subsequently declared to be unconstitutional. Through the Legislature, it directs that such claims for refund be made

to the Board of Finance and Revenue. But, as is its right, it affixes thereto the requirements that the petition for refunds must be filed within five years of the payment or settlement of the money for which the refund requested is made. This is a reasonable condition precedent to the right itself. The remedy is not available on any terms but may be asserted only under the conditions which the Legislature saw fit to prescribe: *Land Holding Corp. v. Board of F. & Rev.,* 388 Pa. 61, 130 A. 2d 700 (1957). These conditions failed of observance in this case. Appellants' failure to protest or to file timely action contesting the validity of the Act of 1915, followed by opportune requests for refunds, is of their own making. Adequate legal remedies were available. They saw fit to ignore them.

Judgment affirmed.

---

Concurring Opinion by Mr. Justice Cohen:

I would have arrived at the same result by simply holding that mandamus does not lie. It is elementary that a writ of mandamus cannot lie to control the discretionary actions of a public official. Here, appellants seek not only to compel the public officials sitting as the Board of Finance and Revenue to exercise their discretion, but they seek to compel them to do so in a manner contrary to the language of the very act that created the Board, namely, to go back further than five years in the granting of refunds. Thus, even if an appeal to the court below from the Board would lie, which it does not, *Land Holding Corporation v. Board of Finance and Revenue,* 388 Pa. 61, 130 A. 2d 700 (1957), and even if the final act of the Board were subject to review in mandamus, which it is not, *Calvert Distillers Corporation v. Board of Finance and Revenue,* 376 Pa. 476, 103 A. 2d 668 (1954), and even if mandamus could

be used as an alternative for an appeal, which it cannot, *Kaufman Construction Co. v. Holcomb*, 357 Pa. 514, 55 A. 2d 534 (1947), mandamus still would not lie for the purpose of compelling these public officials to exercise discretion in an area where they have none. The Board cannot be required to pass upon appellants' petition and by so doing violate the very terms of the statute by which it was created, and violate the very authority given by the legislature to the Board to function in refund matters.