## Universal Film Exchanges, Inc., Appellant, *v.* Board of Finance and Revenue.

Argued May 22, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Arlin M. Adams,* with him *Philip M. Hammett, Samuel D. Slade, William A. Schnader,* and *Schnader, Harrison, Segal & Lewis,* for appellants.

. *George W. Keitel,* Deputy Attorney General, with him *Edward T. Baker,* Deputy Attorney General, and *David Stahl,* Attorney General, for Board of Finance and Revenue, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 13, 1962:

These eight appeals seek review of Orders of the Board of Finance and Revenue denying refunds of motion picture censor *license fees* paid by them between 1915 and 1953. Appellee moved to quash and this motion was orally argued together with the appeals on the merits.

The present appellants have for many years been major distributors of motion pictures in the Commonwealth of Pennsylvania and elsewhere. Appellants continuously paid to the Pennsylvania State Board of Censors annual license fees of $2.00 for each film, under the Motion Picture Censorship Act from its effective date in 1915 until March, 1956, when—as required by *Joseph Burstyn, Inc. v. Wilson,* 343 U. S. 495—that Act was declared unconstitutional by this Court in *Hallmark Productions, Inc. v. Carroll,* 384 Pa. 348, 121 A. 2d 584 (1956).

The First Amended Petitions for refund were presented to the Board of Finance and Revenue at a hearing on July 2, 1959. These petitions covered only the amount of license fees paid *within five years* from the date of the filing of Appellants' original refund petitions, to wit, $337,436.25. The Board on July 8, 1959, ordered refunds, in the nature of credits, to each of these eight appellants in the exact amounts claimed.

Appellants, four and one-half months after this Court's decision in *Box Office Pictures v. Board of Finance and Revenue,* 402 Pa. 511, 166 A. 2d 656, filed with the Board the (present) Second Amended Petitions for refund of *license fees* which were paid by them *more than five years* prior to the filing of appellants' original refund petitions. These claims totaled $4,637,258.14 and upwards for the period between 1915 and 1953. In these present amended petitions, appellants averred *for the first time* that the license fees were paid *"under duress and compulsion"*. This averment was obviously made in an attempt to bring their claims within certain language of this Court contained in the *Box Office Pictures* case, supra. No answers were filed by the Board to appellants' present petitions. A hearing was held by the Board on these petitions on September 26, 1961, but no testimony was taken. On October 9, 1961, the Board entered the following Orders (as of October 3, 1961):

"After full consideration the Prayer of this Petition is refused." The present appeals were taken from these Orders.

Section 503(e) of the Fiscal Code of April 9, 1929, P. L. 343, as amended, 72 P.S. §503(e) provides: "The action of the Board on all petitions filed under this section shall be final." These appeals are therefore in the nature of narrow certiorari.

"If an appeal is prohibited by an Act, or the decision of the Agency is stated to be final or conclusive,

the law is well settled that an appeal will lie to the Courts in the nature of a narrow certiorari and this Court will review only (1) the question of jurisdiction; (2) the regularity of the proceedings before the Agency; (3) questions of excess in exercise of powers; and (4) constitutional questions: Cf. DeVito v. Civil Service Commission, 404 Pa. 354, 172 A. 2d 161 (and cases cited therein); Dauphin Deposit Trust Company v. Myers, 401 Pa. 230, 164 A. 2d 86:" *Keystone Raceway Corp. v. State Harness Racing Commission,* 405 Pa. 1, 173 A. 2d 97.

Appellants contend that the five year Statute of Limitations in Section 503(a)(4)* of the Fiscal Code of 1929, supra, is unconstitutional when applied to bar recovery of license fees exacted by the Commonwealth for many years under the duress and compulsion of an unconstitutional act, viz., the Motion Picture Censorship Act. They thus raise a constitutional question and consequently appellee's motion to quash the appeal is denied.

Appellants, motion picture distributors, were required by the Motion Picture Censorship Act of May 15, 1915, P. L. 534, as amended by the Act of May 8, 1929, P. L. 1655, 4 P.S. §41 et seq., to remit to the State Board of Censors a fee of two dollars "for the examination of each film, reel or set of views of one thousand two hundred lineal feet, or less," and two dollars for each duplicate or print thereof. The present actions were brought under Section 503(a), although more properly under Section 503(a)(4), of the Fiscal Code, supra, which pertinently provides: "Section 503. Refunds of State Taxes, License Fees, Et Cetera.—The

---

* Petitioners' claims for refunds were filed, apparently inadvertently, under §503(a) which has a two-year statute of limitations. They argue that if the five-year statute of limitations in §503(a)(4) is unconstitutional, a fortiori, the two-year statute of limitations is unconstitutional.

Board of Finance and Revenue shall have the power, and its duty shall be, (a) To hear and determine any petition for the refund of . . . license fees . . . paid to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled . . . . All such petitions for refund must be filed with the board within two years of the payment of which refund is requested, or within two years of the settlement in the case of taxes or bonus, whichever period last expires, except . . . (4) When any tax or other money has been paid to the Commonwealth, under a provision of an act of Assembly subsequently held by final judgment of a court of competent jurisdiction to be *unconstitutional\** . . . . In such case, the petition to the board may be filed either prior or subsequent to such final judgment, but must be filed *within five years of the payment* of which a refund is requested . . . ."

Appellants contend, we repeat, that the five year limitation violates the 14th Amendment of the United States Constitution if applied to bar recovery of license fees *exacted under duress and compulsion* of the unconstitutional Motion Picture Censorship Act of 1915, supra.

If payment of taxes is voluntary, even though the taxing statute is later held unconstitutional, the money paid cannot be recovered in the absence of statutory authorization: *Royal McBee Corp. Tax Case,* 393 Pa. 477, 143 A. 2d 393 (1958); *Chesebrough v. United States,* 192 U. S. 253; *Ward v. Love County,* 253 U. S. 17, 22 (1920); *Swift Company v. United States,* 111 U. S. 22.

In *Royal McBee Corp. Tax Case,* 393 Pa., supra, the Court said (p. 480) : "At common law a voluntary payment of taxes, erroneously made, could not, in the absence of a statute, be recovered: Calvert Distillers

---

\* Italics throughout, ours.

Corp. v. Board of Finance & Revenue, 376 Pa. 476, 479, 103 A. 2d 668 (1954); Girard Trust Co. v. Philadelphia, 359 Pa. 319, 325, 59 A. 2d 124 (1948); Hotel Casey Co. v. Ross, 343 Pa. 573, 23 A. 2d 737 (1942); Arrott v. Allegheny County, 328 Pa. 293, 194 A. 910 (1937)."

It follows that since a State need not allow recovery of taxes or other moneys *voluntarily but erroneously paid,* it can impose reasonable restrictions on any recovery it does allow: *Box Office Pictures v. Board of Finance & Revenue,* 402 Pa., supra; *Swift Company v. United States,* 111 U. S. 22, 31.

However, where *taxes or other moneys* were paid under duress and compulsion, no statutory authority is required or necessary to enable the payors to recover the amounts paid, because a denial of recovery in such a situation would violate the 14th Amendment to the United States Constitution: *Ward v. Love County,* 253 U. S., supra; *Carpenter v. Shaw,* 280 U. S. 363, 369; *Swift Company v. United States,* 111 U. S., supra; *Glendale Heights Ownership Association v. Glenolden Borough School District,* 393 Pa. 485, 491-492, 143 A. 2d 386.

Since appellants cannot bring themselves within the recovery provisions of the Fiscal Code, supra, they have the burden of proving that the payments were made under duress and compulsion: *Mahnomen County v. United States,* 319 U. S. 474, 477 (1943).

Whether duress and compulsion exist is a question that must be determined in the light of the facts and circumstances of each case, and where, as here, the relevant facts are not in dispute the question is one of law for the court to decide: *Eslow v. City of Albion,* 153 Mich. 720, 117 N.W. 328. Cf. *Kaplan v. Kaplan,* 404 Pa. 147, 171 A. 2d 166; *Kalyvas v. Kalyvas,* 371 Pa. 371, 89 A. 2d 819; *Johnson v. Angretti,* 364 Pa. 602, 73 A. 2d 666.

We turn then to a consideration and determination of the relevant facts in the case at bar and what facts amount in law to payments made under duress and compulsion.

The Amended Second Amended Petition of each appellant avers: "6. Petitioner avers that the aforesaid fees were paid under duress and compulsion because the unconstitutional Motion Picture Censorship Act of 1915 (a) required the payment of license fees in advance to secure the approval of films by the Pennsylvania State Board of Censors, thereby making such payment an absolute condition precedent to distributing or exhibiting films in the Commonwealth; (b) provided for the immediate seizure of films which had not been approved by the Pennsylvania State Board of Censors; (c) provided for the arrest and summary conviction of persons distributing and exhibiting unapproved films; (d) provided for the arrest and summary conviction of the persons hindering or interfering with the seizure of any unapproved films; (e) provided no appeal procedure or court review *prior* to the payment of the required license fees and formal disapproval of films by the Board."

Appellants contend that since its averments of duress and compulsion were not denied by the Commonwealth, it is well settled both by the decisional law and the rules of civil procedure that they are deemed to be admitted. This rule, however, does not apply to the present appeals for two reasons. First, the Board of Finance and Revenue is not a Court but an administrative tribunal which handles over 40,000 petitions for refunds per year. Viewed realistically, it is apparent that the Board cannot answer each and every one of these petitions. Secondly and more important, the rule upon which appellants rely is inapplicable because appellants have pleaded (a) legal conclusions, and (b) facts which, as we shall see, are not sufficient to con-

stitute duress. Cf. *Bogash v. Elkins,* 405 Pa. 437, 176 A. 2d 677. In that case the Court said (page 439): "Preliminary objections admit all facts which are well pleaded, but not the pleader's conclusions or averments of law: Ross v. Metropolitan Life Insurance Co., 403 Pa. 135, 169 A. 2d 74; Gardner v. Allegheny County, 382 Pa. 88, 114 A. 2d 491; Narehood v. Pearson, 374 Pa. 299, 96 A. 2d 895."

It will be noted that the duress and compulsion averred by appellants consists (most importantly) of (1) mandatory payment of license fees in advance of distributing or exhibiting, and (2) the seizure of films if they had not been approved, and (3) the arrest and summary conviction for distributing and exhibiting unapproved films. While the decisions of the Supreme Court of the United States do not clearly delineate or define what constitutes a payment under duress and compulsion and it is very difficult to reconcile the language in some cases with the language in others, we are convinced that the license-fee payments made by these appellants were not made under legal duress.

"Neither a statute imposing a tax, *nor the execution thereunder* nor a mere demand for payment, is treated as duress:" *Gaar, Scott & Co. v. Shannon,* 223 U. S. 468, 471 (1912). However indicative of the fact that the line of demarcation between a voluntary payment and a payment under duress is not absolutely clear, the Court went on to say, at pages 471-472: ". . . It does not necessarily follow that there will be a levy on goods. Or, if there is, the citizen, to avoid the consequences of the levy, may pay the money, regain the use of his property and maintain a suit for the recovery of what has been exacted from him. The legal remedy redresses the wrong. But he has the same right to sue if he pays under compulsion of a statute, whose self-executing provisions amount to duress. An act which declares that where the franchise tax is not paid by a

given date a penalty of twenty-five per cent shall be incurred, the license of the company shall be cancelled, *and the right to sue shall be lost,* operates much more as duress, than a levy on a limited amount of property. Payment to avoid such consequences is not voluntary but compulsory, and may be recovered back. Swift Co. v. United States, 111 U. S. 22, 29; Robertson v. Frank Brothers Co., 132 U. S. 17, 23; Oceanic Navigation Co. v. Stranahan, 214 U. S. 320, 329; Atchison, Topeka & Santa Fe R.R. v. O'Connor, decided this day, ante, p. 280. *Otherwise plaintiff might be without any remedy whatever.* For in Arkansas Building & Loan Asso. v. Madden, 175 U. S. 269, it was held that a taxpayer was not entitled to an injunction, against the enforcement of a similar statute of the State of Texas, unless he could show that there was no adequate remedy at law. And, as payment under such an act was treated as compulsory, for which suit might be maintained, and as there was nothing to indicate inability of complainant to pay, or of the defendant to respond to a judgment, the bill was dismissed without prejudice. That necessarily recognized that the plaintiff had the right to pay under protest, sue the officer for the amount exacted and recover it back in case it should be made to appear that the statute was void."

In *Chesebrough v. U. S.,* 192 U. S. 253, the United States Supreme Court said (p. 259) : "The rule is firmly established that taxes voluntarily paid cannot be recovered back, and payments with knowledge and without compulsion are voluntary. At the same time, when taxes are paid under protest that they are being illegally exacted, or with notice that the payer contends that they are illegal and intends to institute suit to compel their repayment, a recovery in such a suit may, on occasion, be had, although generally speaking, even a protest or notice will not avail if the payment is made voluntarily, with full knowledge of all the circum-

stances, and without any coercion by the actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment, over the person or property of the party making the payment, from which the latter has no other means of immediate relief than such payment. Little v. Bowers, 134 U. S. 547, 554; Railroad Company v. Commissioners, 98 U. S. 541, 544; Radich v. Hutchins, 95 U. S. 210, . . .''

Moreover, there is no violation of due process, because the present appellants could have paid the fees under protest and with notice of an intent to reclaim and recover the amounts paid, and brought a timely suit in assumpsit, or under certain circumstances a bill in equity to restrain the collection of the tax, where there is no power to levy the tax to recover the amount paid: *Glendale Heights Ownership Association v. Glenolden Borough School District,* 393 Pa. 485, 143 A. 2d 386; *Narehood v. Pearson* (and cases cited therein), 374 Pa. 299, 306, 96 A. 2d 895; *English v. Robinson Township School District,* 358 Pa. 45, 55, 55 A. 2d 803; *Jamison Coal & Coke Co. v. Unity Township School District,* 362 Pa. 389, 392, 66 A. 2d 759; *Commonwealth v. Dauphin County,* 354 Pa. 556, 563, 47 A. 2d 807.

These appellants, we repeat, paid the license fees for the entire thirty-nine year period, made no protests as to the payments, and brought no timely action to recover the money or to test the Constitutionality of the Act. Many remedies were available to appellants, but they took advantage of none. For example, they had the right to appeal from the decision of the Board of Censors to the Court of Common Pleas of the proper County under Section 26 of the Act of May 15, 1915, P. L. 534, 4 P.S. §54. This was the very procedure used in *Hallmark Productions, Inc. v. Carroll,* 384 Pa., supra, page 350, to determine the constitutionality of the Motion Picture Censorship Act of 1915. Appel-

lants also had the right to file petitions for refunds within two years or within five years of payment, under Section 503(a) and 503(a)(4) of the Fiscal Code, supra, and therein raise the question of their right of recovery as well as the Constitutionality of the Censorship Act. The appellants would also have the right to appeal from any summary conviction.

Even if this licensing provision were a tax, instead of a license fee, we said in the *English* case, supra, page 55: ". . . it has long been settled in this Commonwealth that a plaintiff may go into equity to restrain attempted taxation for want of a power to tax . . . ."

Furthermore, in this class of case, Pennsylvania applies the doctrine of equitable estoppel. In *Wilson v. Philadelphia School District*, 328 Pa. 225, 195 A. 90, the Court said (page 246): "Once a taxpayer has omitted to voice his objection *within a reasonable time* after the levy has been made and with knowledge that his claim will be made the basis of expenditures to be incurred, and the expenditures have been made, it is too late for him to attempt to impeach the validity of the tax levy."

Appellants' payments were for license fees, not taxes.

We have heretofore treated these appeals as if the license fees were the equivalent of taxes although in this case they were not. Appellants admit that the Motion Picture Censorship Act was not a taxing measure. The license fees imposed thereunder were necessary in order to defray the cost or expense of the services rendered to appellants and others under the Act. As this Court said in *Box Office Pictures v. Board of Finance & Revenue*, 402 Pa., supra (pages 518-519): "Under the Act of 1915, the fees in question were paid without protest as a quid pro quo for the inspection services rendered by the Censorship Board. From these services real and substantial benefits enured to these appellants

and others engaged in the business of distributing motion picture film. There was a benefit without resulting loss to those now complaining in as much as the cost incident to these services was, undoubtedly, cast upon the theatre-going public. During these long ensuing years, despite adequate opportunity to take legal action to challenge the validity of the Censorship Act, acquiescence, inaction and payment without protest continued until 1956. Viewed in all of these aspects, we cannot now conclude that the administrative actions of the Censorship Board should be viewed as if they never had been.

" . . . The Commonwealth, under the fiscal code previously alluded to, in effect, permits itself to be sued for fees paid under a statute subsequently declared to be unconstitutional. Through the Legislature, it directs that such claims for refund be made to the Board of Finance and Revenue. But, as is its right, it affixes thereto the requirements that the petition for refunds must be filed within five years of the payment or settlement of the money for which the refund requested is made. This is a reasonable condition precedent to the right itself. The remedy is not available on any terms but may be asserted only under the conditions which the Legislature saw fit to prescribe: Land Holding Corp. v. Board of F. & Rev., 388 Pa. 61, 130 A. 2d 700 (1957). These conditions failed of observance in this case. Appellants' failure to protest or to file timely action contesting the validity of the Act of 1915, followed by opportune requests for refunds, is of their own making. Adequate legal remedies were available. They saw fit to ignore them."

Furthermore, even when taxes were paid under duress and compulsion, the taxpayer could not recover them beyond six years after payment: *Swift Company v. United States*, 111 U. S., supra.

All of the decisions of the United States Supreme Court which are relied upon by appellants to prove duress and compulsion are distinguishable.

Few taxes or license fees would ever be collected if sanctions or penalties were not provided or imposed for non-payment, and consequently most taxing and licensing acts have sanctions or penalties to enforce payment. To hold that such provisions amount in law to duress and compulsion would be to hold that all taxes and license fees in *all* such cases were paid under duress and compulsion. We find no merit legally or even equitably in appellants' contentions.

We hold (1) that the license fees paid by these appellants were not paid under duress or compulsion, and (2) that the five year statutory period for the recovery of moneys voluntarily but mistakenly paid to the Commonwealth, as required by a licensing Act which was subsequently declared to be unconstitutional, was reasonable and violated none of appellants' constitutional rights.

Orders affirmed.

———

Concurring Opinion by Mr. Justice Cohen:

Article I, §11 of the Constitution provides " suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

The legislature provided for the refund of state tax and license fees by the Board of Finance and Revenue (Board) under certain conditions in §503 of the Fiscal Code of April 9, 1929, P. L. 343, as amended, 72 P.S. §503. Section 503 further provides that when a tax or other money has been paid to the Commonwealth under a provision of an Act of Assembly, subsequently held by a court of competent jurisdiction to be unconstitutional, the petition to the Board shall be filed within

five years of the payment for which the refund is requested. Justice EAGEN said in *Box Office Pictures, Inc. v. Board of Finance and Revenue,* 402 Pa. 511, 166 A. 2d 656 (1961), ". . . these requirements were not merely procedural provisions, but express conditions of the right to obtain a refund . . . ."

Since appellants' petition for a refund was not filed within five years of the time when the license fees were paid, they have failed to meet the fundamental conditions for relief. Any relief beyond the five year period would be in direct contravention to Article I, §11 of our Constitution.

Appellants rely heavily upon *Carpenter v. Shaw,* 280 U. S. 363 (1930) and *Ward v. Love County,* 253 U. S. 17 (1920). Both cases deal with facts vastly dissimilar and do not consider the problem of sovereign immunity of states from suit nor the validity of statutory time limitations prescribed for such suits. There is no precedent for this action. An appeal does not lie from the refusal of the Board to pass upon appellants' petition which seeks to require the Board to violate the very terms of the statute by which it was created and exceed the powers that the legislature had granted.

I would terminate this litigation by granting the motion to quash.