## Montgomery County Tax Claims Bureau Appeal.

Argued December 12, 1963; reargued September 16, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

[redacted]

[redacted]

*Horace A. Davenport*, Assistant Solicitor, with him *Roger B. Reynolds*, Solicitor, for appellant.

*Raymond M. Seidel*, with him *High, Swartz, Roberts & Seidel*, for appellee.

Opinion by Flood, J., December 8, 1964:

The Tax Claims Bureau of Montgomery County conducted an upset sale of certain property of which the appellees are record owners. A consolidated return was filed with the office of the Prothonotary of Montgomery County and the court below signed a decree nisi in accordance with the Real Estate Tax Sale Law, Act of July 7, 1947, P. L. 1368, art. VI, §607, as amended (72 PS §5860.607). The appellees filed objections and exceptions to the consolidated return. After a hearing the court sustained objections and exceptions to certain costs charged by the bureau and ordered it to refund these to the appellees.

On this appeal the bureau attacks this result on both procedural and substantive grounds. It contends that (1) the court had no authority to pass upon these objections because they were filed too late and (2) the costs disallowed by the court were properly charged.

1. The Real Estate Tax Sale Law, Act of July 7, 1947, P. L. 1368 et seq., as amended (72 PS §5860.101 et seq.), is a self-contained statute. It provides that

the officials of the various taxing districts of a county in which the act is in force shall on or before the first Monday in May in each year, return to the bureau a list of all properties as to which the preceding year's taxes are unpaid (§306). Not later than July 31st of the same year, the director of the bureau must give notice to each delinquent taxpayer that the return has been filed and a tax claim entered against him (§308). If the claim is not paid or exceptions to it are not filed by the property owner prior to January 1st of the following year, it then becomes absolute (§311). If the exceptions are filed, the bureau "shall hold a hearing thereon", after giving due notice, and dispose of them in accordance with the evidence and its prescribed powers (§314(b)). The bureau may set aside or reduce the claim if it is found invalid in whole or in part either because the taxes had been paid or "for any other reason not involving a question which could have been raised by an appeal provided for by law" (§314(a)). The property owner may appeal to the court of common pleas within fifteen days after notice of the bureau's decision (§314(b)). Upon final disposition of the exceptions, the claim becomes absolute (§314(f)).

The appellees filed exceptions to certain items in the claims on the ground that they were not chargeable to them under the act. The bureau notified them that since they did not aver payment of the taxes, they were not entitled to a hearing under §314. No appeal was taken at this time and an upset sale of the properties was held on October 10, 1960. After the sale, the property owners filed objections and exceptions with the court, raising the same questions they had raised in their exceptions to the claims.

The act provides that the bureau shall sell the property after the tax claim has become absolute and the period of redemption has been allowed to expire

(§601(a)). Not later than sixty days after the sale the bureau is required to make a consolidated return of the sale (§607(a)), of which notice shall be given by publication stating that objections or exceptions to the return may be filed within sixty days (§607(b)). These objections or exceptions may question the proceedings in respect to the sale but not the validity of the tax claims (§607(d)). If the objections or exceptions are sustained and the court deems the defect not amendable, it must invalidate the sale and order another to take place (§607(e)).

Despite the fact that the objections to the sale went to the correctness of the tax claims rather than the proceedings relating to the sales, contrary to the provisions of §607(d), they were sustained by the court. In so doing, the court held that failure to grant the appellees a hearing on their exceptions to the claims made any purported disposition of those exceptions a nullity. Hence the claims never became absolute and the sales were unauthorized under §601(a). It then decided that some of the charges on which the exceptions to the tax claims were based were invalid. However, in accordance with the request of the bureau, it did not set aside the sales but merely ordered the items which it held invalid to be refunded to the taxpayers since, in its view, the defect was amendable by a refund of the costs.

The bureau contends that (1) the appellees' request for a hearing, after they had filed exceptions contesting the validity of the tax claim, was not in accordance with §314 of the act because they did not aver payment of the taxes to a taxing district but raised a question of law, (2) even if they were entitled to a hearing, the refusal of the bureau to grant their request was a decision within the scope of §314(b) and their failure to appeal to the court of common pleas within fifteen days after notice of the decision by the

bureau was a bar to any further proceedings to protest the tax claims, and (3) in any event, the alternative procedure of bringing an action of mandamus to compel the bureau to hold a hearing was a proper remedy and, therefore, the nine months' delay by the appellees before filing their appeal with the court of common pleas constituted laches.

While the appellees did not aver payment in their exceptions to the claims, they did present other reasons against the validity of the claims. Not all questions relating to the claims are withdrawn from the provisions of §314, but only those "which could have been raised by an appeal provided for by law". This does not bar the appellees because the bureau does not set forth nor do we find any procedure by appeal or otherwise, other than filing exceptions to the claim, under which they could have raised these questions. An example of an "appeal provided for by law" is found in the assessment procedure. A collateral attack on the assessment by means of a proceeding before the Tax Claims Bureau, when the taxpayer has failed to avail himself of the appeal procedure laid down by the statutes with respect to assessments, is, therefore, precluded by §314. Since there is no provision in the statutes for appeal with regard to the questions raised here by the appellees' exceptions to the claims, they were properly filed under §314 and they were entitled to a hearing before the bureau.

As to the appellees' failure to appeal to the court within fifteen days after the bureau's refusal of a hearing, the court below correctly held that any disposition by the bureau on exceptions filed under §314 must be made on the basis of a hearing. Refusal of the bureau to hold a hearing is not a decision on the exceptions and consequently the fifteen day limitation on appeal to the court of common pleas is not applicable. Moreover, a decision without opportunity for a hearing is

a violation of the statutory due process provided by §314 and, therefore, void. To decide otherwise would be to penalize the petitioners for the bureau's violation of its statutory duty to hold a hearing. Consequently the court below correctly held that there was no decision on the exceptions and, as a result, the claims never became absolute. Since a sale cannot validly be held under §601(a) until the claims become absolute, the sales here are invalid and the court had the right to so hold in ruling on exceptions to the sales. The claimants are accordingly not guilty of laches.

2. The remaining question is whether the court correctly determined that the charges to which the appellees object were improperly charged to them. The costs in question are $1.25 for the entry of the claim, $1.75 for satisfaction of the claim, $2 for preparation of the sale and $6 for a title search.

Although these costs are relatively small in amount, the issue of their validity raises a serious question relating to the functioning of county tax claims bureaus created under the Real Estate Tax Sale Law of 1947, supra. The taxpayers contend that they are operational costs which cannot be charged to them, arguing that only amounts paid to persons outside the bureau are so chargeable. The county contends that, since they are costs of the collection of taxes on the individual properties as distinguished from what may be called overhead or general operational costs of the bureau, they are properly chargeable as costs to the taxpayers.

Neither position can be fully sustained under the language of the statute. The pertinent sections are §§206, 207, 308(d), 501(a) and 605(f) of the Real Estate Tax Law of 1947 (72 PS §5860.101 et seq.), supra.

Section 207 provides that the county shall retain four per cent (4%) of all moneys collected or received by it in order to reimburse it for the costs and expenses

of operating the bureau. This reimbursement "shall be in addition to the costs, fees and expenses advanced by the county, which, upon recovery, are payable to the county as provided by the preceding section [206] of this act."

Section 206 provides that "The county shall be liable, or initially liable for all costs, fees and expenses which shall be required to be paid to administer the affairs of the bureau and of this act, including but not limited to, costs of mailing and advertising notices, fees for the entry of claims, and proceedings thereon, and all other proceedings required by this act, except where otherwise provided by this act, . . . title searches and salaries and compensation, and the costs of bonds of officers, employes and agents of the bureau, and rental of offices, furniture, equipment, material and supplies for the use of the bureau. All such costs, fees and expenses shall be paid . . . from appropriations made by the county . . . and when any of such costs, fees and expenses are recovered they shall be deposited in the treasury of the county for the use of the county."

It thus appears from §§206 and 207 that all expenses required to operate the bureau, including not only overhead but also such costs as might be allocable to the collection of taxes on individual properties, are payable in the first instance by the county, which by way of reimbursement shall retain (1) 4% of all money collected or received by it, and (2) all costs, fees and expenses advanced by the county and "recovered". These sections throw no light upon what costs, fees or expenses are recoverable.

Since no court action is involved in the sale for delinquent taxes under this act, none of the statutes imposing court costs are relevant. Only three sections of the Real Estate Tax Sale Law have any reference to what costs may be recoverable. Section 308(d) directs that the costs of mailing or posting notices of the re-

turn of delinquent taxes shall be taxed as part of the costs of the proceedings "and shall be paid by the owners the same as other costs". Section 501(a) provides for redemption by the owner, within the time therein fixed, by payment of all taxes due on the property with interest, and "the record costs, including pro rata costs of the notice or notices given in connection with the returns of claims". Finally, Section 605, governing the upset price to be fixed by the bureau for a sale upon a claim absolute, directs that this price shall include "(f) the record costs and costs of sale, including pro rata costs of the publication of notice and costs of mail and posted notices in connection with the return of the claim and mail and posted notices of sale."

Section 308 has no application to the costs here involved. Section 501(a), while it has no direct application to the matter before us, indicates that "record costs" shall be payable by the taxpayer. Section 605(f) repeats this with regard to the upset price at sale and adds that the costs of sale shall also be part of the upset price. The only specific reference in either §501(a) or §605(f) as to what are "record costs" is the cost of giving notice of the return of the claim. Section 605(f) also provides specifically that costs of sale shall include "mail and posted notices of sale". With this meager guide we must determine the bureau's right to collect the disputed items from the taxpayer.

The taxpayers argue that under §207 the 4% retained by the county is provided to cover all its expenses except for costs, fees and expenses "advanced by the county". They contend that the title search and the preparation for the sale, as well as the entry of the claim and satisfaction thereof, were made by the bureau's own employes, and therefore these four items were not "advanced" by the county and are not re-

coverable from the taxpayers under §207, which provides that the county's 4% shall be in addition to "costs, fees and expenses advanced by the county" and payable to it upon recovery.

The court below adopted this position. It correctly held that as purchasers at the sale of properties not owned by them, the appellees had no complaint since they voluntarily bid the upset price. It further held that as to properties which the appellees owned at the time of the sale, they could not, as taxpayers, be charged with any of these four items since they were operational in character. By operational costs we understand that the court meant the costs of services performed by the bureau through its own employes as contrasted with amounts paid out by it to others, such as the cost of mailing notices.

As to the charges for the entry and the satisfaction of the claim the county argues that they can be, and therefore should be, allocated to the specific property and charged to the taxpayer-owner. The statute gives no basis for this broad claim, unless it is to be implied from the right under §605(f) to include "record costs" in the upset price and the right under §501(a) to recover "record costs" as part of the redemption price.

Nothing in the act throws light upon what are to be considered "record costs". Such costs normally refer to costs which have to do with court records—prothonotary's charges, sheriff's charges and other charges placed upon the record by filed bill of costs or otherwise by statutory authority. See *Budde v. Sandler*, 204 Pa. Superior Ct. 36, 201 A. 2d 247 (1964). Here there were no court proceedings.

Normally, costs, like penalties, can only be imposed by statute. In the absence of statutory authority, the county cannot charge them merely because it thinks it would be fair to do so. We know of no authority to impose as "record costs" anything other

than costs in proceedings in a court of record, in the absence of a specific statutory provision. The court below concluded that none of these items were "record costs" as that phrase is used in the statute, and we agree.

It would, of course, be equitable to assess all costs attributable to the sale of an individual property against the delinquent taxpayer who is the owner of the property, as the bureau would like to do. But it would be equally equitable to assess against him a proportionate share of the cost of operating the bureau instead of placing it upon all the taxpayers of the county or the municipality to which the taxes are due. However, the statute has not done either. Only the legislature has power to impose these costs upon the delinquent taxpayer by amending or replacing the statute. The bureau has no power to do so. *Miners Savings Bank v. Duryea Borough,* 331 Pa. 458, 200 A. 846 (1938); *Kline v. Harrisburg,* 362 Pa. 438, 68 A. 2d 182 (1949).

The $6 charge representing title search and the $2 for preparation of the sale are costs of sale which are to be included in the upset price under §605. Whether or not these are operational costs, they are costs "advanced by the county" under §207 to be included in the upset price under §605(f). Therefore, they are "recovered" by the county upon the sale, and hence available for the use of the county, in addition to the 4%, under §206.

While these costs were not "advanced by the county" in the sense of being paid out to third parties, they were advanced in the sense that they were services performed by the employes of the bureau. But whatever the word "advanced" may mean in §207, the specific right under the upset price provision of §605(f) to include the costs of sale gives the county a right, in the normal case, to retain the items for title search and preparation for sale out of the upset price.

The question remains whether these costs can be assessed against this taxpayer, whose property the bureau had no right to sell since the claim against him never became absolute. It seems clear that no liability as to these costs may be properly imposed upon him under the circumstances of this case. Consequently the order of the court below must be affirmed.

Order affirmed.

CONCURRING OPINION BY WRIGHT, J.:

I agree with Judge HONEYMAN that each of the four disputed cost items is operational in character, and is therefore included within the four percent retained as reimbursement by the county. From a practical standpoint, as agreed by counsel for both sides, all four items should be considered in the same category. Since the majority is affirming the order of the court below, I concur, not in the reasoning, but in the result.