**In Re: TAX SALE PURSUANT TO the REAL ESTATE TAX SALE LAW OF 1947, as Amended.**

**Appeal of: Cathy Holler.**

Commonwealth Court of Pennsylvania.

Argued April 19, 2010.
Decided Sept. 20, 2010.
Reargument Denied Dec. 2, 2010.

Michael P. Malakoff, Pittsburgh, for appellant.

Joseph A. Askar, Beaver, for appellee, Beaver County Tax Claim Bureau.

BEFORE: McGINLEY, Judge, and McCULLOUGH, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Cathy Holler (Appellant) appeals from the December 4, 2008 order of the Court of Common Pleas of Beaver County (trial court) which denied Appellant's petition entitled "Emergency Verified Motion to Enforce this Court's Order of November 30, 2007 to Vacate an Improperly Scheduled Judicial Sale for December 8, 2008." Also before our court is the Beaver County Tax Claim Bureau's (Tax Bureau) motion to quash the appeal as moot or as an interlocutory order. We deny the Tax Bureau's motion to quash, affirm the trial court in part and reverse and remand to the trial court in part.

The subject property, located at 576 Merchant Street in Ambridge (Property), has been owned by Susan Markvan (Markvan) since 1972. Appellant is Markvan's daughter.

In October of 2002, the Tax Bureau entered into an installment agreement with Appellant. Thereafter, Appellant failed to make such payments in accordance with the agreement and on January 9, 2003, Appellant filed for bankruptcy. Because of Appellant's failure to make payments, the installment agreement was declared null and void and the Property was listed for upset sale in September of 2003, however, it was not sold.

Thereafter, the Tax Bureau listed the Property for judicial sale. In July of 2004, Appellant petitioned for a stay of the judicial sale. The trial court advised Appellant that the delinquent taxes on the Property totaled $4,612.00, including interest and costs. Appellant agreed not only to the $4,612.00 total, but also agreed to pay, thereafter, the sum of $545.00 per quarter. The trial court removed the Property from the list, ordering in pertinent part as follows:

1. The Judicial Sale of Tax Parcel No. 10–002–0901–000–01–1 scheduled for July 19, 2004, is continued to November 1, 2004, no further notice of sale is required.

2. Catherine S. Holler [Appellant] shall comply with the financial arrangement agreed upon in 2002 with the ... Tax ... Bureau to pay the sum of $545.00 per quarter on the delinquent taxes on the subject property of $4,612.00. The payment of $545.00 shall be made on or before November 1, 2004.

3. [Appellant] has been granted this continuance to proceed with the Complaint filed at No. 11250 of 2004 against ... Markvan, concerning title to subject property.

Trial court order, July 15, 2004.

On December 5, 2005, the Property was sold at a judicial sale for nonpayment of real estate taxes. Appellant contested the sale and on June 20, 2006, the parties consented to return the Property to the status quo prior to the sale. Thus, the Property was returned to Markvan.

On February 12, 2007, Appellant's bankruptcy was discharged. On May 12, 2007, Markvan passed away. However, no estate was opened for Markvan and a deed was not conveyed to Appellant for the Property.

On July 16, 2007, the Tax Bureau petitioned for judicial sale of the Property for nonpayment of real estate taxes. The trial court granted the Tax Bureau's petition for lack of response, issued a rule to show cause and scheduled a hearing for September 17, 2007. On October 10, 2007, the judicial sale of the Property was scheduled for December 3, 2007.

Thereafter, Appellant allegedly received informal notice of the judicial sale from a neighbor and immediately, on November 28, 2007, filed an emergency petition to

vacate the December 3, 2007 judicial sale for lack of notice and other irregularities. Appellant's petition requested that the December 3, 2007 judicial sale date be vacated and requested that the Tax Bureau be required to provide "a complete accounting of all taxes and other charges allegedly due and owing ..." Appellant's petition, Request for Relief No. 2, at 8.

On November 30, 2007, the trial court held oral argument. The trial court judge and Appellant stated at the hearing on November 30, 2007, in pertinent part, as follows:

> THE COURT: I'm going to take it off the Judicial Sale, and I'm going to set it specially for Judicial Sale, and here is what's going to happen: They're going to give you an accounting of the taxes owed on 576 Merchant Street. You're going to have to open up an Estate for your mother because you don't have standing to stop this Judicial Sale if the notices went out.
>
> \*      \*      \*
>
> I want you to know as of November 30th at 9:26 a.m. that the taxes due are $10,305.71.
>
> \*      \*      \*
>
> THE PETITIONER: When am I going to get the pay history so that I can compare the pay records that I have compared to the running totals that the Tax Claim Bureau has? They put numbers, they put numbers out everywhere, but they can't back them up, and I would like a pay history so that I have the right.
>
> THE COURT: Mr. Kohlman, when can you give her an accounting, so to speak?
>
> \*      \*      \*
>
> THE COURT: All right. Before she leaves the Courthouse, give her the ac-

counting of the payments on 576 Merchant Street.

> MR. KOHLMAN: Yes, Your Honor.
>
> THE COURT: Have her sign that she has received them on a copy.
>
> MR. KOHLMAN: Yes, sir.
>
> \*      \*      \*
>
> THE COURT: That's right, and what it will total, if I understand Mr. Kohlman correctly, will be $10,305.71 with interest continuing to run. So, there's your number.
>
> THE PETITIONER: Okay, but that doesn't mean that everything in there is true and correct.
>
> \*      \*      \*
>
> THE PETITIONER: Now, what if I have made payments to that and they have been applied elsewhere erroneously?
>
> THE COURT: Well, you are going to have to prove it.
>
> \*      \*      \*
>
> THE COURT: ... So, you have thirty days to clean this up. If its not cleaned up in thirty days.... It's going to be sold. So, what I've done is: I have leveled the playing field, but the burden is on you because there's no more smoke now. You're going to have to prove that you paid on this and that $10,305.71 is not correct. If you don't prove it, it's going down.
>
> THE PETITIONER: And the Tax Claim Bureau doesn't have to back up their accounting, the numbers that they bring to you? ... Because they write them down, they're true and correct?
>
> THE COURT: Miss Holler, let me make this perfectly clear on the record: They provide you with the payment schedule. The burden is on you to prove that it's not correct. Do you understand that?

THE PETITIONER: Okay, and let me ask you this Your Honor: If I prove that they're not correct—

THE COURT: We will adjust the amount accordingly, and then you can make payment....

Trial court record, November 30, 2007. The trial court granted Appellant a continuance of the judicial sale date and removed the Property from the December 3, 2007 judicial sale list. The trial court ordered in pertinent part as follows:

1. The Petition to Vacate shall be considered as a Petition to Continue the Judicial Sale scheduled for December 3, 2007;

2. The Judicial Sale scheduled for December 3, 2007, is continued to a date that will be specially set after January 30, 2008; no further notice or advertisement is required;

3. The record owner, Susan Markvan, died on May 12, 2007, and no estate has been filed;

4. Notice of the delinquent taxes was provided to Cathy Holler on November 30, 2007, totaling $10,305.71, and acknowledged by signature of Cathy Holler.

Trial court order, November 30, 2007, at 1. The record is clear that Appellant was provided with notice of the delinquent taxes totaling $10,305.71. The trial court had Appellant acknowledge the total amount of delinquent taxes by her signature. Appellant acknowledged the delinquent tax notice as "received", but not as "correct". Appellant did request an itemization to explain the miscellaneous charges that were included in the amount of taxes owed.

On January 9, 2008, Appellant's attorney sent a letter to the Tax Bureau requesting a listing of the taxes assessed, the interest accrued, the penalties assessed, and the costs assessed on the two parcels at 576 and 575 Merchant Street.[1] Along with those items, Appellant further requested a running account balance of amounts due and owing on each date on which there is a credit or debit on either account and requested an itemization of all costs assessed against the properties.

On January 11, 2008, the Tax Bureau responded to Appellant's letter stating, among other things, that a payment history report for each parcel would cost $5.00.

On January 21, 2008, Appellant's attorney sent the Tax Bureau another letter which contained a check for $10.00 to obtain payment history reports for the two properties. Appellant again requested the same information, noting that she wanted the reasons for the costs and the penalties and the time period for the interest amounts.

On January 29, 2008, the Property was deeded from Markvan's estate to Appellant. However, such deed was not recorded.

On January 31, 2008, Appellant submitted to the trial court, an affidavit in which she set forth that an estate had been opened for her mother, that Appellant was now the owner of the Property, as she included the deed, and that on January 21, 2008, she sent the Tax Bureau a certified letter which included a check for expenses in order to obtain her tax records and information to check the accuracy of the tax amounts allegedly due and owing, to insure that the taxes and charges she paid in prior years were correctly allocated between the two properties. Appellant stated that regarding "costs", she wanted to know precisely what those identified costs were, which ones were paid, and what the codes and other account identification

---

1. 575 Merchant Street is property owned by Appellant's brother.

numbers represented. Appellant further stated that she received an incomplete response from the Tax Bureau and that the Tax Bureau did not give Appellant an itemized accounting. Appellant did not pay the $10,305.71 owed for delinquent taxes. The Property was ultimately rescheduled for judicial tax sale on December 8, 2008.

Thereafter, Appellant again claimed that she informally learned that the Property was scheduled for tax sale on December 8, 2008. Appellant, on December 4, 2008, presented the subject petition in civil motions court, attempting to enforce the trial court's order of November 30, 2007, and questioning the rescheduled tax sale and the recalculated taxes and costs of $12,983.65 and seeking a reduction to $10,305.71, which was the amount stated in the November 30, 2007 order.

On December 4, 2008, the trial court denied Appellant's petition. The trial court in its opinion dated March 12, 2009, stated in pertinent part as follows:

It should be apparent that each time the property was placed on the Tax Upset or Judicial Sale List over the course of seven (7) years, Ms. Holler acknowledged the amount of delinquent taxes, interest and costs due and never raised any issue concerning the amount provided by the ... Tax ... Bureau.

It should also be noted that ... [Appellant] is not the owner of the subject property.... No estate has ever been raised for ... Markvan, who died in 2007.

The Appellant ... has alleged, as a conclusion of law, that the ... Tax ... Bureau disregarded the January 9, 2003, filing of Bankruptcy by imposing additional excessive an[d] illegal charges on the subject property during the bankruptcy proceedings. No proof of this allegation of excessive and illegal charges was provided at the time of the presentation of the Motion on December 4, 2008, only statements by ... [Appellant] that payments were made and were not properly accounted on the Tax ...Bureau's records. At this time, the Court ordered a recess and the ... Tax...Bureau to provide the "Tax Claim Payment History" which was reviewed by ... [Appellant] in Court with an explanation of the increase from November 30, 2007 of $10,305.71 to December 4, 2008 of $12,983.65 based on the 2008 unpaid taxes, interest and costs. Only two (2) payments were ever made.

\* \* \*

This Court is not certain how to address the "merits" of this case when the only matter before the Court on December 4, 2008, was whether the subject property should be removed again from the Judicial Sale scheduled on Monday, December 8, 2008, based on ... [Appellant]'s Motion to Vacate the Improperly Scheduled Judicial Sale of December 8, 2008. There was no inquiry as to the merits but only the continuance.... [Appellant] signed the Notice of Delinquent Taxes from the ... Tax...Bureau.

Trial court opinion, March 12, 2009, at 1–4. On December 8, 2008, Appellant paid the delinquent taxes in full, under protest, and the Property was removed from the judicial tax sale list. The receipt from the Tax Bureau sets forth the costs as follows:

| | Bureau Costs |
|---|---|
| Entry of Claim | |
| Satisfaction of Claim | |
| Postage | |
| Advertising | |
| Constable Sheriff | |
| Stay of Sale | |
| Lien Certificate | |
| Search | |
| Misc. | $3580.00 |
| Total Costs. | $3580.00 |

(R.R. at 252a.) The Bureau did not itemize such costs charged Appellant. Appellant now appeals the trial court's order of December 4, 2008, contesting the amount of delinquent taxes she claims she was forced to pay under duress.

The Tax Bureau asserts that because Appellant paid the taxes, thus removing the Property from the judicial tax sale list, the issue is moot and the appeal should be quashed. Alternatively, the Tax Bureau argues that the trial court's order of December 4, 2008, is an interlocutory order and therefore, not appealable.

■ As to whether the trial court's order of December 4, 2008, was appealable, we observe that it had the automatic effect of relinquishing judicial power to act further and transferred all future proceedings to another non-judicial governmental unit to perform a ministerial function, i.e. the judicial sale. Thus, the December 8, 2008 order was an appealable order pursuant to Pa. R.A.P. 311(f), as an interlocutory appeal as of right. Pa. R.A.P. 311(f) provides in pertinent part as follows:

> (f) Administrative Remand. An appeal may be taken as of right from: (1) an order of a common pleas court or government unit remanding a matter to an administrative agency or hearing officer for execution of the adjudication of the reviewing tribunal in a manner that does not require the exercise of administrative discretion; or (2) an order of a common pleas court or governmental unit remanding a matter to an administrative agency or hearing officer that decides an issue which would ultimately evade appellate review if an immediate appeal is not allowed.

The trial court made it clear that it would take no further action to protect Appellant's Property. Thus, Appellant had to pay under protest the contested, unitemized miscellaneous charges in order to keep the Property. Thus, the interlocutory appeal of the December 8, 2008 order was appealable under Pa. R.A.P. 311(f), as of right, as it was an issue that would ultimately evade appellate review if an immediate appeal was not allowed.

■ Further, the Appellant's issues are not moot, as she paid the taxes under protest, thus the issue of the accuracy of the amount due was not waived. *See Universal Film Exchanges, Inc. v. Board of Finance and Revenue,* 409 Pa. 180, 186, 185 A.2d 542, 545 (1962)(taxes paid under duress, no statutory authority required or necessary to enable taxpayers to recover the amounts paid).

Now, before this court, Appellant contends that the trial court erred in failing to determine that a homeowner may not be compelled, by threat of a judicial sale, to pay thousands of dollars of alleged unitemized, aggregate costs when claimed by the Tax Bureau, where repeated requests for itemization were refused, and where the alleged payment was made under protest for fear of losing the Property at a judicial sale.

Specifically, Appellant contends that: (1) the trial court denied her statutory right to pay the claimed taxes in three installment payments over a twelve month time period, in determining that the Tax Bureau did not violate the Real Estate Tax Sale Law (Law)[2]; (2) that a valid upset sale must occur after the installment agreement default; (3) that a valid tax body return must precede a valid tax bureau tax claim; (4) that Appellant was denied statutory and constitutionally adequate notice when she was not notified or provided a reasonable opportunity to respond to the Tax Bureau's October 10,

---

2. Act of July 7, 2947, P.L. 1368, *as amended,*    72 P.S. §§ 5860.101–5860.803.

2008 request for a judicial sale date and/or the court's October 10, 2008 rule setting December 8, 2008 as the judicial sale date; (5) that a homeowner cannot be taxed unitemized aggregate costs, and (6) that Appellant was denied a hearing at which time the unitemized aggregate costs and other disputed tax claims and statutory irregularities could be contested, reviewed and adjudicated by the court on a factual record.

■ Initially, Appellant contends that she was denied her statutory right to pay the claimed taxes in three installment payments over a twelve month time period. Appellant contends that Section 603 of the Law, 72 P.S. § 5860.603, authorizes the taxpayer to elect to pay delinquent taxes in installments over a one year period.

Section 603 of the Law provides that "[a]ny owner or lien creditor of the owner may, *at the option of the bureau,* prior to sale ... enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims ... and ... to pay the balance ... in not more than three (3) installments all within one (1) year of the date of said agreement...." 72 P.S. § 5860.603 (Emphasis added).

As such, it is not a statutory right of the taxpayer to pay delinquent taxes in installments, but rather an option which is determined by the Tax Bureau. The Tax Bureau did agree, in October of 2002, to enter into such agreement with Appellant. However, Appellant failed to make such payments in accordance with the agreement. Thus, the installment agreement was declared null and void and the Proper-

ty was listed for upset sale in September of 2003. However, it was not sold.[3]

The Tax Bureau did not err in refusing to accept a partial payment in 2008, some six years after the installment agreement, was executed, inasmuch as installment agreements only last for one year. 72 P.S. § 5860.603(2). We must note that Section 603 of the Law relates strictly to the procedure and sale of property prior to and during an upset sale, not a judicial sale. Judicial sales are governed by Sections 610–612 of the Law, 72 P.S. §§ 5860.610–5860.612, and do not provide for partial payments or installment agreements. Thus, Appellant's argument as to whether or not the Tax Bureau erred in not accepting Appellant's check after the judicial sale scheduled for December 3, 2007, was continued, is in error, as Section 603 of the Law only applies to upset sales.

■ Second, Appellant contends that the Tax Bureau violated Section 605 of the Law, which requires that a valid upset sale precede a valid judicial sale. Appellant states that where, as here, an installment agreement existed, that a valid upset sale must occur after the installment agreement default. 72 P.S. § 5860.605. Specifically, Appellant contends that since the Tax Bureau entered into an installment agreement with her that it explicitly acknowledged that Appellant was one of the reputed owners of the Property. The Tax Bureau did enter into the agreement with Appellant. However, the installment agreement states that the Property owner is Markvan. Thereafter, Appellant defaulted on the agreement and the Property was exposed at the September 8, 2003 upset sale pursuant to Section 603 of the Law. As Markvan's Property was exposed to an upset sale prior to the scheduling of

---

**3.** There is a long history prior to the tax sale at issue regarding this Property and Appellant. Appellant had been making payments off and on and dealing with the Tax Bureau on her mother's behalf.

the judicial sale, the Tax Bureau did not violate Section 605 of the Law.

■ Appellant further contends that no sale, judicial or upset was proper, as she had filed for bankruptcy. However, Appellant was not the record owner of the Property at the time of her bankruptcy filing in January of 2003. The Property was still recorded and deeded to Markvan and her husband. Appellant possessed no interest in the Property which could have become the property of the bankruptcy estate. Further, the Tax Bureau did not petition for judicial sale until July of 2007, after Appellant's bankruptcy had been discharged in February of 2007.

■ Third, Appellant contends that a valid tax body return must precede a valid tax bureau tax claim. Specifically, Appellant states that the record shows that certain identified taxes, interest and penalties were wrongly charged to the Property and paid by Appellant on December 8, 2008. Appellant asserts that in 2005 when the Property was illegally sold, the Tax Bureau did not issue a return in Markvan's name, thus Appellant is not responsible for such taxes, interests and costs which accumulated during that time. Section 301 of the Law provides:

> All taxes which may hereafter be lawfully levied on property in this Commonwealth by any taxing district, and all taxes heretofore lawfully levied by any taxing district on any property, the lien of which has not been lost under existing laws (whether or not a claim has been filed, or return thereof has been made to the county commissioners) shall be and are hereby declared to be a first lien on said property....

72 P.S. § 5860.301. Thus, the tax goes with the property, not the person and Appellant would be responsible for any taxes which continued to accumulate, even while Markvan was not officially the record owner.

■ Fourth, Appellant contends that she was denied statutory and constitutionally adequate notice because she was not notified or provided a reasonable opportunity to respond to the Tax Bureau's October 10, 2008 request for a judicial sale date and the trial court's October 10, 2008 rule setting December 8, 2008 as the judicial sale date. Appellant bases this argument upon the notice requirements of Section 601 and 602 of the Law, which pertain to upset sales, not judicial sales. 72 P.S. §§ 5860.601 and 5860.602.

The requirements for a judicial sale are set forth in Sections 610 through 612 of the Law, 72 P.S. §§ 5860.610–5860.612. The Tax Bureau notified the record holder, Jeffrey Markvan as the executor of the estate of Susan Markvan, as well as any and all lien holders as depicted by a proper title search. In addition, a copy of said rule and order was mailed to Appellant's last known address via first class, United States postal service. Further, the Tax Bureau made three attempts to personally serve Appellant, as an interested party, but such attempts proved fruitless, as certified by the record. R.R. at 216a–222a. Appellant's attorney, Malakoff, was not served, as Malakoff did not file his appearance for Appellant until after the December 4, 2008 hearing. Additionally, as noted in the trial court's order of November 30, 2007, no further notice was required.

Fifth, Appellant contends that a home owner can only be taxed statutory record costs, not unitemized aggregate costs. In accordance with Section 309 of the Law, a valid tax claim must include the names of the taxing districts, the name of the owner of the property against which it is filed and a description of the property. 72 P.S. § 5860.309. Appellant claims that because of the multitude of invalid upset and judi-

cial sale proceedings accompanied by the necessary notice, postings and advertising costs, the bankruptcy proceeding-related costs and the wrongful sale of the Property, the total claimed costs were quite substantial and the Tax Bureau **probably** claimed unitemized aggregate miscellaneous costs, including nontaxable charges.

Appellant states that she has been unable to obtain an accounting or itemization of the unitemized and aggregate costs, as such request was denied by the Tax Bureau. Appellant further contends such itemization was ordered by the trial court at its November 30, 2007 hearing.

■ Appellant cites to Section 314 of the Law which provides for proceedings to attack the validity of a claim, stating that the Tax Bureau probably overcharged her costs. Section 314 of the Law provides in pertinent part as follows:

(a) Any claim for taxes may, prior to the time it becomes absolute, be set aside or reduced in amount by the bureau with which it is filed if the claim is found invalid in whole, or in part, by reason of the fact that the taxes for which the claim was entered were paid in whole, or in part, to a proper officer or agent of the taxing district, or is found invalid, in whole or in part, for any other reason not involving a question which could have been raised by an appeal provided by law.

Any such claim prior to the time it becomes absolute may be set aside or reduced in amount by the court of common pleas on appeal, as hereinafter provided, for any reason which constitutes a just, sufficient and valid defense to the claim in whole, or in part, except want of notice of the return and entry of the claim by the bureau, or for any dispute in the amount of the claim which involves the amount of the assessed valuation of the property or the validity of the tax levied.

(b) Any defendant in any such claim, at any time before the day fixed for the claim to become absolute under section 311, may file with the bureau exceptions to the claim as entered, or to any part of the claim. The bureau, after giving due notice to the taxing districts interested, shall hold a hearing thereon and either disallow the exceptions or allow the exceptions in whole, or in part, and strike off or reduce the claim in accordance with the evidence produced and the powers of the bureau as hereinbefore prescribed.

If the defendant is aggrieved by the decision of the bureau he may, within fifteen (15) days after notice thereof, appeal by petition to the court of common pleas....

72 P.S. § 5860.314(a) and (b). Section 311 of the Law provides that "[o]n the first day of January following" the tax notice, "if the amount of the tax claim referred to in the notice has not been paid, or no exceptions thereto filed, the claim shall become absolute." 72 P.S. § 5860.311.

The present controversy was brought through Appellant's petition to enforce a trial court order and vacate a judicial sale. Appellant did not file exceptions to any tax notice with the Tax Bureau, however, Appellant did not receive notice from the Tax Bureau. Thus, the Tax Bureau's tax notice did not become absolute for the years in question here and the issue was properly before the trial court.

■ Section 7 of the Act of July 22, 1936, P.L. 67, further provides that "upon application ... by any **taxpayer**[4], the tax

---

4. We recognize that Appellant was not the record owner of the Property during the time

in question. Appellant, however, did pay the taxes and was recognized by the Tax Bureau

levying authority ... shall furnish to such delinquent taxpayer a statement of the delinquent taxes owed by him to such municipal subdivision, showing the face amount, the penalty, if any, the interest, if any, and **any costs or other charges *in detail*** against such real property as shown by the records in his custody." 72 P.S. § 5568q. (emphasis added). A review of the record reveals that Appellant did request such statement repeatedly and the Tax Bureau failed to provide such detailed statement.

In *Montgomery County Tax Claims Bureau Appeal*, 204 Pa.Super. 409, 205 A.2d 104 (1964), the tax bureau conducted an upset sale of appellees' property. The appellees filed objections and exceptions to certain costs in the claim on the ground that they were not chargeable to them under the Law. After a hearing, the court sustained objections and exceptions to certain costs charged by the bureau and ordered it to refund these costs to appellees. The tax bureau had set out the itemized costs in its notice, so that appellees knew what the itemized costs were and, when they disagreed with a cost, they were able to contest it.

In the present controversy, Appellant was not provided a detailed itemization of the costs due. In fact, the Tax Bureau's form provides areas for such itemization and the Tax Bureau failed to include such information for Appellant.

Finally, Appellant contends that she was denied a hearing at which time the unitemized aggregate costs and other disputed tax claims and statutory irregularities could be contested, reviewed and adjudicated by the court on a factual record. Specifically, Appellant argues that the trial court ordered on November 30, 2007, that Appellant be provided an itemization of the claimed aggregate costs due and a hearing at which she could contest the unitemized, aggregate costs.

A review of the record reveals that Appellant should be provided a hearing limited to the itemization of the Tax Bureau's costs and whether such costs would be permitted under the Law. As previously stated, the Tax Bureau provided Appellant with the tax due accompanied by "Bureau Costs". Although the Tax Bureau's form provides for costs associated with postage, advertising, lien certification, etc., the only amount listed on the form was for miscellaneous costs in the amount of $3580.00, and total costs of $3580.00. We agree with Appellant that she is entitled to an itemization of the costs she owed and not merely a miscellaneous grouping of costs.

Accordingly, we must deny the Tax Bureau's motion to quash, affirm the trial court's order in part, reverse in part and remand for a hearing to order the Tax Bureau to itemize costs that were charged, whether such costs would be permitted under the Law and in the event any costs paid by Appellant are not identified by the Tax Bureau as properly chargeable, to order a refund of same to Appellant.

### *ORDER*

AND NOW, this 20th day of September, 2010 the Beaver County Tax Claim Bureau's motion to quash the appeal is denied and the order of the Court of Common Pleas of Beaver County in the above-captioned matter is affirmed in part, reversed in part and remanded for a hearing regarding the costs.

Jurisdiction relinquished.

as the taxpayer, in that Appellant paid the taxes on the Property and the Tax Bureau attempted to notify Appellant regarding the taxes owed on the Property.

DISSENTING OPINION BY Judge McGINLEY.

I respectfully dissent to the majority's conclusion to remand the present matter "for a hearing to order the Tax Bureau to itemize costs that were charged, whether such cost were permitted under the Law and in the event any costs paid by Appellant are not identified by the Tax Bureau as properly chargeable, to order a refund of the same." Opinion at 368.

The majority astutely has recounted the procedural history as noted by the trial court:

> The Appellant ... has made repeated requests to the ... Tax Claim Bureau and has received on each occasion an accounting of the unpaid taxes, interest and costs as evidenced by the Court Order of July 15, 2004. (emphasis added).

> On July 15, 2004, Ms. Holler [Appellant] was advised that the delinquent taxes on the subject property totaled $4,612.00 including interest and costs. Ms. Holler [Appellant] agreed not only to the $4,612.00 total but also agreed to pay the sum of $545.00 per quarter. The property was taken off the July 19, 2004 Tax Upset Sale List. (emphasis added).

> . . . .

> On November 30, 2007, Ms. Holler [Appellant] presented an identical Motion to Vacate the Court Order of July 15, 2004, and once again she was provided with an accounting of delinquent taxes totaling $10,305.71. Based on past experience, the Court had Ms. Holler [Appellant] acknowledge the total amount of delinquent taxes by her signature. (emphasis added).

> . . . .

> It should be apparent that each time the property was placed on the Tax Upset Or Judicial Sale List over the course of

> seven (7) years, Ms. Holler [Appellant] acknowledged the amount of delinquent tax, interest and costs due and never raised any issue concerning the amount provided by the ... Tax Claim Bureau. (emphasis added).

> . . . .

> On December 4, 2008, the [Appellant] ... presented again in Motion Court ... on 'Emergency Verified Motion to Enforce this Court's November 30, 2007 Order to Vacate Improperly Scheduled Judicial Sale for December 8, 2008'. The Motion was denied by this Court because the same issue had been presented to this Court in 2004 and 2007. It represented the same attempt to reduce the delinquent taxes to the amount of $10,305.71 as of November 30, 2007.

> . . . .

> Regardless ... on December 8, 2008, prior to the Judicial Sale scheduled at 10:00 A.M., Ms. Holler [Appellant] paid $12,893.65 to the ... Tax Claim Bureau. Obviously, the subject property was removed from the Judicial Sale List and the issue was resolved. (emphasis added).

Opinion of the Trial Court, March 12, 2009, at 1–4; Reproduced Record at 198a–201a.

I believe that because Appellant paid the taxes owed prior to the judicial sale, any challenge concerning a lack of a detailed itemization of the costs due is moot. I would affirm in the order of the trial court across the board.