In re: Exceptions and Challenges of RAUSCH CREEK LAND, L.P., Claim for Delinquent Taxes–Tax Nos. 13–0–54803019, 13–0–054841304, 13–0–54951301, 22–0–54851319 and 22–0–54930102.

Appeal of: Rausch Creek Land, L.P.

Commonwealth Court of Pennsylvania.

Argued June 4, 2012.
Decided Nov. 8, 2012.
Reargument Denied Jan. 7, 2013.

Dirk S. Berger, Pottsville, for appellant.

Robert S. Frycklund, Pottsville, for appellee.

BEFORE: LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge BROBSON.

This is an appeal from an order of the Court of Common Pleas of Schuylkill County (trial court). The trial court affirmed an order of the Schuylkill County Tax Claim Bureau (Bureau), dated November 21, 2011, which denied Rausch Creek Land, L.P.'s (Rausch Creek) exceptions and challenges filed against the Bureau's claims for delinquent taxes. For the reasons set forth below, we affirm.

On or about December 30, 2010, Rausch Creek filed challenges and exceptions to the Bureau's tax claims relating to mineral (in this case coal) rights owned by Rausch Creek, as described in surface mining permits issued by the Department of Environmental Protection (DEP) and identified as tax parcel nos. 13–0–54803019, 13–0–054841304, 13–0–54951301, 22–0–54851319, and 22–0–54930102 (the Tax Parcels).[1] (Reproduced Record (R.R.) at 98a–102a.) Rausch Creek failed to pay the taxes assessed on the mineral rights for the 2009 tax year. It appears undisputed that Rausch Creek received tax bills for the taxes owed. In addition, Rausch Creek also received absolute letters from the Bureau, indicating that the Tax Parcels (*i.e.,* the mineral rights) would be exposed to public sale if the taxes were not paid or exceptions were not filed by December 2010. (R.R. at 98a–102a.)

Rausch Creek filed with the Bureau separate challenges and exceptions under the Real Estate Tax Sale Law (RETSL)[2] to

---

1. It appears that the tax parcel numbers consist of three components. The first portion of the tax parcel number references the township in which the property (mineral right) is located. The second portion of the tax parcel number references the type of mineral—in this case "0" represents coal. The third portion of the tax parcel number references the surface mining permit that DEP issued in relation to the mineral right. (Reproduced Record (R.R.) at 58a.)

2. Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101–.803.

each of the five (5) absolute letters sent by the Bureau. (Certified Record (C.R.), Item No. 1.) Rausch Creek, in its exceptions to the validity of the tax claims against the Tax Parcels, argued that all of the specified Tax Parcels pertain to *surface mining permits* as opposed to *real property*. (*Id.*) Rausch Creek also challenged the validity of the tax claims on the basis that the Tax Parcels are not identified sufficiently in the records of Schuylkill County Tax Mapping, the Bureau, or the Schuylkill County Recorder of Deeds, because the maps or descriptions of the Tax Parcels are not maintained *within* Schuylkill County. As a result, Rausch Creek argued that the absolute letters were inadequate, because they failed to identify properly and consistently the Tax Parcels at issue in violation of Section 309(c) of the RETSL, 72 P.S. § 5860.309(c), which requires that "property against which the claim is filed" be sufficiently described. Further, Rausch Creek argued that the absolute letters were not sent to the owner(s) of the Tax Parcels, and, therefore, they were sent in violation of Section 308 of the RETSL, 72 P.S. § 5860.308.

Following a hearing, the Bureau issued an opinion and order dated February 11, 2011, wherein the Bureau denied and dismissed Rausch Creek's challenges and exceptions to the validity of the tax claims. (C.R., Item No. 1.) Specifically, the Bureau concluded that the genuine issues raised by Rausch Creek related to the validity of the underlying *assessments*. The Bureau concluded, therefore, that Rausch Creek should have filed appeals with the Schuylkill County Board of Assessment Appeals pursuant to Section 8844(c) of the Consolidated County Assessment Law, 53 Pa.C.S. § 8844(c).[3] Furthermore, the Bureau not-

ed that the RETSL allows a tax claim to be set aside, reduced, or found invalid "for any other reason not involving a question which could have been raised by an appeal provided for by law." *See* Section 314 of the RETSL, 72 P.S. § 5860.314.

Rausch Creek appealed the Bureau's decision to the trial court. Rausch Creek raised the same arguments on appeal to the trial court, specifically that the absolute letters were deficient as they failed to identify properly the Tax Parcels and notify the *owner(s)* of the affected property. Rausch Creek stated that "although ... the assessments at issue are themselves invalid," the notices and any sale of the Tax Parcels are invalid as the "absence of maps corresponding to the subject [t]ax n[umbers] literally makes it impossible for the [Bureau] to identify the propert[ies] that [are the] subject of said claims and possible sale." (C.R., Item No. 1.)

The trial court held a hearing on Rausch Creek's appeal on September 23, 2011. Prior to the hearing, however, the Bureau filed an application for summary relief. In its application, the Bureau argued that the proper procedure for challenging an assessment is to file an appeal with the Schuylkill County Board of Assessment Appeals. As a result, the Bureau argued that it did not have jurisdiction to rule on an assessment issue and, further, that based on precedent, a party cannot collaterally attack an assessment by filing an action with the Bureau.

At the hearing before the trial court, Virginia Murray, the Chief Assessor of Schuylkill County, testified that maps dealing with mineral resources have been outsourced to Resource Technology Corpora-

---

**3.** Section 8844(c) of the Consolidated County Assessment Law provides that any person aggrieved by an assessment "whether or not the value thereof shall have been changed since the preceding annual assessment, or any taxing district having an interest in the assessment, may appeal to the [B]oard" on or before September 1.

tion (RTC) in State College, Pennsylvania, since 1996. (R.R. at 17a.) Ms. Murray testified that RTC maintains maps containing the property location of surface mining permits. (*Id.* at 20a, 22a.) RTC assigns a value to the coal contained on the properties one time per year and sends the Schuylkill County Assessment Office those figures once per year in order for the Schuylkill County Assessment Office to assess the *minerals* where surface mining permits are held. (*Id.* at 20a.) According to Ms. Murray's testimony, the county did not frequently use the information contained on the mineral resources maps. (*Id.*) Further, the Schuylkill County Assessment Office referred any individual interested in mineral resource information to RTC. (*Id.* at 44a.) Finally, Ms. Murray testified that she has no involvement with the Bureau's entry of claims or absolute letters. (*Id.* at 49a.)

As Rausch Creek attempted to question Ms. Murray on the history of the tax maps and the maintenance of mineral resource maps held outside Schuylkill County, the Bureau objected to the relevance of the questioning. (*Id.* at 24a.) Specifically, the Bureau stated that the line of questions and relevant statutes dealing with the location of tax maps has no relation to the Bureau. (*Id.*) Rausch Creek pointed the trial court to Section 405 of the County Code,[4] requiring certain county offices to keep frequently used records in the county seat, which, in this case, is Pottsville, Pennsylvania. (*Id.*) The Bureau objected to Rausch Creek's evidence and argument, stating that Rausch Creek's contentions related to an assessment issue. (*Id.* at 26a–27a.) The trial court sustained the Bureau's objection that Section 405 of the County Code was irrelevant to Rausch

Creek's exceptions and challenges to tax claims.

Rausch Creek's land manager, Arthur Diaz, also testified before the trial court. (*Id.* at 68a.) Mr. Diaz testified that he is responsible for monitoring assessments for Rausch Creek. (*Id.* at 69a.) Mr. Diaz stated that there were several issues with tax bills pertaining to coal and mining projects, specifically noting that some tax bills were improperly sent to Rausch Creek. (*Id.*) Mr. Diaz testified that he addressed these concerns with RTC. (*Id.* at 74a.) Subsequent to that conversation, Mr. Diaz testified that Rausch Creek no longer received improperly sent tax bills. (*Id.*)

Finally, David Williams, a mining engineer and surveyor, testified that Schuylkill County's present mapping system identifies when a surface mining permit is issued by DEP. (*Id.* at 79a.) When the permit is issued, the permitted parcel (*i.e.*, the tax parcel) is assigned a tax parcel number, which references the permit number. (*Id.*) The area of the tax parcel, therefore, should correspond to the area of the mineral associated with the surface, as depicted in the permit. (*Id.* at 80a.) Mr. Williams testified that the permit number, however, does not always sufficiently describe the real property associated with the mining permit. (*Id.* at 79a.) Specifically, he opined that the boundary lines for the surface mining permits are, many times, left to the discretion of the surveyor and, therefore, different descriptions are possible. (*Id.*) Accordingly, Mr. Williams noted that the present mapping system does not always adequately describe some properties. (*Id.* at 80a.)

4. Section 405 of the County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 405.

After the hearing, the trial court affirmed the Bureau's decision denying Rausch Creek's challenges and exceptions. The trial court explained that an aggrieved party may challenge a tax claim for any reason "not involving a question which could have been raised by an appeal provided by law." Section 314 of the RETSL. In this case, Rausch Creek's challenges were questions of law that should have been challenged through an assessment appeal to the Schuylkill County Board of Assessment Appeals. Accordingly, the trial court concluded that Rausch Creek's exceptions and challenges were after-the-fact challenges to tax assessments, which Rausch Creek improperly raised with the Bureau. (Trial court's opinion and order, attached to Appellant's Brief.) Further, the trial court stated that "[a] collateral attack on the assessment by way of a proceeding before the [Bureau] after the tax payer failed to avail itself of the appeal procedure under the assessment statutes is precluded under [Section 314(a) of the RETSL]." (Id.) See In re: Upset Sale, Tax Claims Bureau of Montgomery Cnty., 204 Pa.Super. 409, 205 A.2d 104, 107 (1964). Finally, the trial court noted that Rausch Creek, while believing the assessment to be improper, never challenged the assessment with the Schuylkill County Board of Assessment Appeals.

On appeal,[5] Rausch Creek argues that the trial court erred when it concluded that the Bureau lacked subject matter jurisdiction over the underlying challenges and exceptions. Second, Rausch Creek argues that the trial court erred in denying the exceptions and challenges to the tax claims, because the notices failed to meet the requirements of Section 309(c) of the RETSL. Third, Rausch Creek similarly argues that the trial court erred in denying the exceptions and challenges, because the notices failed to notify the "owner" of the affected property as required by Section 308(a) of the RETSL. Finally, Rausch Creek argues that the trial court erred in sustaining the Bureau's objection that Section 405 of the County Code, requiring certain county offices to keep regularly used documents at the county seat, was irrelevant to the proceedings and Rausch Creek's argument.

First, we will address whether the Bureau lacked subject matter jurisdiction over the challenges and exceptions. We begin by noting that the underlying premise throughout all of Rausch Creek's argument is that the Schuylkill County Tax Assessment Office lacked authority to assess the Tax Parcels for a variety of reasons. Rausch Creek appears to contend that because the assessment is improper based on the nature of the property involved [6] and because the Tax Parcels were

5. "This Court's review in tax sale cases is limited to a determination of whether the trial court abused its discretion, erred as a matter of law or rendered a decision with lack of supporting evidence." Wiles v. Washington Cnty. Tax Claim Bureau, 972 A.2d 24, 28 n. 2 (Pa.Cmwlth.2009).

6. Rausch Creek argues that the notices do not concern taxes assessed against real property, but rather they pertain to the right to mine coal pursuant to a surface mining permit issued by the DEP. Rausch Creek contends, as follows: "Based on the invalidity of that assessment, the unpaid taxes cannot constitute

a valid first lien (or lien of any property for that matter) under [Section 301 of the RETSL,] 72 P.S. § 5860.301. If the assessment is invalid, there can be no lien, and where there is no lien, there can be no claim entered or sale had." (Appellant's Brief at 14.) It is evident that Rausch Creek's reasoning flows from the initial presumption that the assessment is, itself, invalid. Moreover, although the merits of this argument are not before us, it appears that Rausch Creek fails to appreciate that the Schuylkill County assessed its mineral rights, as described by DEP permits. Schuylkill County did not assess its DEP permits.

not sufficiently described for purposes of assessment,[7] a valid tax claim does not exist. Rausch Creek also appears to argue that the tax claims are not valid because the "owners" of the "affected property" were not notified of the assessment.[8] These assessment issues are ones that Rausch Creek should have addressed by way of assessment appeals. As noted earlier, Section 8844 of the Consolidated County Assessment Law provides that any person aggrieved by an assessment may appeal to the assessment board on or before September 1. This statutory remedy is exclusive and mandatory. *Hanoverian v. Lehigh Cnty. Bd. of Assessment,* 701 A.2d 288, 289 (Pa.Cmwlth.1997) (citing *Deigendesch v. Bucks Cnty.,* 505 Pa. 555, 482 A.2d 228 (1984)).

In addition, our Superior Court, in *Montgomery County,* analyzed the section of the RETSL allowing for tax claim challenges. Specifically, when looking to Section 314 of the RETSL, the Superior Court stated:

> Not all questions relating to the claims are withdrawn from the provisions of § 314, but only those which could have been raised by an appeal provided for by law.... An example of an 'appeal provided for by law' is found in the assessment procedure. A collateral attack on the assessment by means of a proceeding before the Tax Claim Bureau, when the taxpayer has failed to avail himself of the appeal procedure laid down by the statutes with respect to assessments, is, therefore, precluded by § 314.

*Montgomery Cnty.,* 205 A.2d at 107.

■ Here, Rausch Creek is attempting to do exactly what the Superior Court prohibited in *Montgomery County.* Essentially, Rausch Creek is attempting to circumvent the assessment appeal process by filing a claim with the Bureau, addressing issues that could have been raised in an assessment appeal. Rausch Creek cannot pursue its disguised assessment appeals with the Bureau, because it failed to file its grievances with the Schuylkill County Board of Assessment Appeals. An appeal of the assessments to the Schuylkill County Board of Assessment Appeals was Rausch Creek's exclusive and mandatory remedy to challenge the validity of the assessments. Further, Rausch Creek cannot now collaterally attack the assessments through a proceeding before the Bureau.

The trial court, therefore, properly dismissed Rausch Creek's exceptions and challenges to the extent that Rausch

7. Rausch Creek argues that the Tax Parcels are not sufficiently identified for purposes of assessment, thereby resulting in an invalid tax claim. Again, this argument is premised on an allegedly invalid assessment. While we do not address the merits of Rausch Creek's argument, we note that the Chief Assessor of Schuylkill County testified that although the maps of the Tax Parcels are not located in Schuylkill County, they, nonetheless, are maintained by RTC in State College, Pennsylvania. (R.R. at 20a.) Any individual seeking access to those maps can obtain information through the assessment office or RTC. We note that Rausch Creek never requested the maps from RTC. Although the Chief Assessor brought the maps to the hearing (in an apparent attempt to provide information requested by Rausch Creek), Rausch Creek made no attempt to establish that these particular maps did not sufficiently identify the Tax Parcels or that they were unreliable. In fact, Rausch Creek did not make any attempt to move the maps into evidence or establish how the specific maps were insufficient, despite its argument that the Tax Parcels were not sufficiently identified. Rausch Creek's renewed argument on this point, therefore, seems somewhat disingenuous.

8. It is somewhat unclear, but Rausch Creek appears to imply that the tax claims are invalid because the owners of the *real property* associated with the mineral rights, as opposed to the owners of the mineral rights, were not notified of the assessment.

Creek could have raised an issue by following the proper procedure for assessment appeals with the Schuylkill County Board of Assessment Appeals. As a result, we agree with the trial court that the Bureau did not have jurisdiction to address Rausch Creek's exceptions and challenges to the extent that they are assessment issues. This does not end our analysis, however, because Rausch Creek also raises the following issues not related to the underlying assessment.

Rausch Creek argues that the tax claims notices violate Section 309(c) of the RETSL, because they fail to sufficiently describe the Tax Parcels for tax sale purposes. Specifically, Section 309(c) of the RETSL provides that claims for taxes must include:

A description of the property against which the claim is filed sufficient to identify the same. A description of the property *shall be deemed sufficient* if it contains (1) a reference to a record of a deed or other instrument of conveyance which describes the property, or (2) a reference to the number or number and block of the property in a plan, recorded in the office of the recorder of deeds of the county, and the record of such plan, or (3) a reference to the number on any lot and block plan officially adopted by a taxing district, or (4) a statement of the street and number of the property as officially designated by public authorities of a taxing district as of the time the property was assessed, or (5) where the property is not identified by reference to the record of a deed, or other instrument of conveyance, and may not be identified by street and number, or by recorded plan, or by a lot and block plan, a statement of the approximate acreage of the property and the name of at least one (1) owner of adjoining property, if such statement is accompanied by information showing the character of

and use to which the property is devoted, as for instance ... "coal, oil or other mineral severed from the surface,".... *The aforesaid description shall not be deemed exclusive.*

(Emphasis added.)

A review of the absolute letters at issue in this matter reveals that they set forth a variety of information regarding the Tax Parcels. For instance, the absolute letter for Tax Parcel 13–0–54803019 includes the acreage of the Tax Parcel, a brief verbal description, and an associated DEP permit number, as follows:

1313 ACRES

Goodspring # 1 West

PERMIT # 54803019

(R.R. at 98a.) The same type of information is included in each absolute letter. (R.R. at 99a–102a.) This information, however, does not appear to meet the requirements of any of the *specific* subsections of Section 309(c) of the RETSL. The absolute letters do not reference a deed or instrument of conveyance as set forth in Section 309(c)(1). They neither refer to a number and/or block of a plan recorded in the office of the recorder of deeds as set forth in Section 309(c)(2), nor do they reference any lot and block plan officially adopted by the county as set forth in Section 309(c)(3). Although the record is devoid of any explanation regarding the verbal description of the Tax Parcels (for instance, the reference to "Goodspring # 1" noted above), the descriptions contained in the absolute letters do not appear to be references to a street and number as set forth in Section 309(c)(4). While the absolute letters contain a statement of the approximate acreage, they do not identify an owner of adjoining property as required by Section 309(c)(5). Thus, the descriptions are not *deemed* to be sufficient under Section 309(c) of RETSL, but this does not

end our analysis because Section 309(c) also provides that "[t]he aforesaid description[s] shall not be deemed exclusive."

Here, the absolute letters specifically reference the Tax Parcel numbers, approximate acreage, and the DEP permit number pertaining to the mineral rights at issue. The descriptions, therefore, were sufficient to allow Rausch Creek to identify the mineral rights at issue, particularly given that Rausch Creek is the holder of the permits. Moreover, the descriptions provide sufficient information to allow an individual (or the county) to request copies of the maps of the mineral rights maintained by RTC. Thus, Rausch Creek's argument that the descriptions of the mineral rights at issue were not sufficient for purposes of Section 309(c) of RETSL is without merit.[9]

■ Next, we will consider Rausch Creek's argument that the Bureau failed to notify the owners of the affected property under Section 308(a) of the RETSL.[10] There is no dispute that Rausch Creek is the holder of the surface mining permits relating to the Tax Parcels, and it appears that Rausch Creek is the owner[11] of the

9. To the extent that Rausch Creek also argues that the Tax Parcels were not sufficiently identified in maps for purposes of sale, we reiterate that Rausch Creek presented no evidence that RTC's maps of the Tax Parcels at issue here were insufficient or unreliable. Rausch Creek's only real argument as to RTC's maps was that they were not maintained in Schuylkill County, which we will address as part of Rausch Creek's final argument to the Court.

10. Section 308(a) of the RETSL provides, in part, as follow:

Not later than the thirty-first day of July of each year, the bureau shall give only one notice of the return of said taxes and the entry of such claim in one envelope for each delinquent taxable property, by United States registered mail or United States certified mail, return receipt requested, postage prepaid, addressed to the owners at the same address listed on the form returned by the tax collector for taxes that are delinquent. In the case of property owned by joint tenants, tenants in common, or husband and wife as tenants by the entireties, the bureau may give the notice required by this section by forwarding only one notice addressed to such joint tenants, tenants in common or husband and wife at the same post office address. If the owner of the property is unknown and has been unknown for a period of not less than five years, such notice shall be given only by posting on the property affected. If no post office address of the owner is known or if a notice mailed to an owner at such last known post office address is not delivered by the postal authorities, then notice as herein provided shall be posted on the property affected. If the property owner has entered into an agreement with the bureau for the payment of the delinquent taxes, the posting is not necessary. Each mailed and posted notice shall, (1) show all the information shown on the claim entered, (2) state that if payment of the amount due the several taxing districts for said taxes is not made to the bureau on or before the thirty-first day of December next following, and no exceptions thereto are filed, the said claim shall become absolute, (3) state that on July first of the year in which such notice is given a one (1) year period for discharge of tax claim shall commence or has commenced to run, and that if full payment of taxes is not made during that period as provided by this act, the property shall be advertised for and exposed to sale under this act, and (4) state that there shall be no redemption after the actual sale.

11. Section 102 of the RETSL, 72 P.S. § 5860.102, defines "owner" as

the person in whose name the property is last registered, if registered according to law, or, if not registered according to law, the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording and in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the

mineral rights, as well. Furthermore, Rausch Creek does not dispute that it owns the mineral rights. Moreover, Rausch Creek received notice of the delinquent taxes by absolute letter.

Rausch Creek appears to conflate the ownership interests in this matter, thereby resulting in a misapprehension of the law. Here, Schuylkill County has assessed the *mineral rights,* not the *real property* under which the minerals are located.[12] Rausch Creek appears to take the position that the real property is, in its words, the "affected property." The mineral rights were, however, the property that was assessed. Thus, for purposes of notice, the "owner" is the owner of the severed mineral rights, not the owner of the real property above the mineral rights. Rausch Creek's argument, therefore, is without merit.

Finally, we address the relevance of Section 405 of the County Code to Rausch Creek's argument. Section 405(a) of the County Code provides, in part:

> The commissioners, auditors, controller, treasurer, sheriff, recorder of deeds, prothonotary, clerk of courts of quarter sessions and oyer and terminer, clerk of orphans' court, register of wills, recorder of deeds and district attorney shall keep their respective offices, and all public records and papers belonging thereto, at the county seat, and in such buildings as may be erected or appropriated for such purpose. The county commissioners shall have the power to keep and maintain records and to contract with persons, for storage, retrieval, and

transmission of county records within or outside the county except that no records shall be stored outside the county seat without the approval of the president judge and the officer in charge of the office to which the records belong. Public records stored outside of the county seat shall be made accessible to the general public at the county seat by means of an electronic telecopying system or facility which will permit the retrieval of the records or exact copies thereof within three business days.

County records used on a regular or frequent basis shall remain in the county seat.

 Nothing in the County Code requires the Bureau or the Schuylkill County Assessment Office to maintain records at the county seat. Additionally, the statute requires that "county records used on a regular or frequent basis shall remain at the county seat." Section 405 of the County Code. Based on Ms. Murray's testimony, it is evident that the mineral resource information is not used on a regular basis. In fact, Ms. Murray's testimony indicates that the information contained on the maps held in State College, Pennsylvania, are used approximately once per year. (R.R. at 20a.) In addition, the general public has access to these records, and the clerks in the Schuylkill County Assessment Office assist members of the public in obtaining the information necessary to locate the mineral mapping resources. Accordingly, the trial court did not err in concluding that Section 405 of the County Code is irrelevant to Rausch Creek's argument.

> neighborhood of such property; as to property having been turned over to the bureau under Article VII by any county, "owner" shall mean the county.

12. Although not cited by the parties, we note that Section 8819 of the Consolidated County Assessment Law, 53 Pa.C.S. § 8819, provides:

> The county assessment office shall assess coal and surface separately in cases where the owner or life tenant of land does not have the right to mine the coal underlying the surface.

Accordingly, we affirm the order of the trial court.

### ORDER

AND NOW, this 8th day of November, 2012, the order of the Court of Common Pleas of Schuylkill County, is hereby AFFIRMED.